## CHARLES M. COLEMAN v. ILLINOIS CENTRAL RAILROAD COMPANY.[1]

January 7, 1916.

Nos. 19,612—(178).

**Safety Appliance Act of 1910.**

1. Section 2 of the Supplemental Safety Appliance Act, 36 St. 298, enacted by Congress and approved April 14, 1910, construed in connection with section 3 of the same act, and *held* to impose the absolute duty upon interstate railroad companies of maintaining the appliances and equipment of their cars in secure and safe condition for

1 Reported in 155 N. W. 763.

use, and that the statute became and remained in full force and operation after July 1, 1911.

**Same — operation of act.**

2. Section 3 of the act provides for a uniform standard of such car equipment appliable to all interstate roads, and an order of the Interstate Commerce Commission, fixing a time for compliance with its order prescribing such uniform standard, did not affect the provisions of section 2 or suspend the operation thereof.

Action in the district court for Ramsey county to recover $50,000 for injury received while in the employ of defendant. In its answer defendant alleged that plaintiff was employed solely in connection with the handling of cars exclusively used in intrastate movement within the state of Illinois, and set out the terms of the Workmen's Compensation Act of that state, approved June 2, 1914, and alleged that both plaintiff and defendant had elected to become subject to the terms of that act, and defendant became bound to pay and plaintiff was bound to accept the amount of compensation set forth therein for any injury received by him, and alleged that plaintiff was not entitled to receive any additional compensation. The case was tried before Dickson, J., who when plaintiff rested granted defendant's motion to dismiss the action. From an order denying his motion for a new trial, plaintiff appealed. Reversed.

*Samuel A. Anderson,* for appellant.

*Charles C. Leforgee, Blewett Lee* and *Butler, Mitchell & Hoke,* for respondent.

BROWN, C. J.

This action was brought to recover for personal injuries alleged to have been suffered by plaintiff by reason of the failure of defendant to comply with the provisions of the act of Congress, approved April 14, 1910, known as the Supplemental Safety Appliance Act, imposing upon all interstate railroad companies the duty of maintaining upon their cars in secure condition certain steps, ladders, brakes, hand-holds and other equipment designed for use by employees in the discharge of their duties. The action was dismissed on the trial below, at the close of plaintiff's case, and plaintiff appealed from an order denying a new trial.

Defendant is a railroad corporation, engaged in interstate traffic, and as such comes within the statute. Plaintiff was in its employ as a brakeman and on June 2, 1914, while engaged in the discharge of his duties as such, received the injury of which he here complains in attempting to climb upon a box car, the rung of the ladder, insecurely fastened, pulled out, and plaintiff was precipitated to the ground and injured. The nature and character of the injuries are not important. The sole question in the case is whether the act of Congress referred to was in force and operation on the day plaintiff so received his injury. If it was, the case should have been submitted to the jury upon the issues of fact presented by the evidence. But, if the act was not then in force, the action was properly dismissed, for it is predicated wholly upon the alleged failure of defendant to comply therewith. This situation was conceded.

The act of Congress in question was supplemental to and an extension of the safety appliance act of 1893, and subsequent amendments, and was evidently enacted for a twofold purpose: (1) To add to and enlarge the scope of the prior enactments; and (2) to authorize the interstate commission to promulgate an order fixing a uniform standard of car equipment for all railroad companies engaged in interstate traffic, and to require such roads to conform their cars and equipment to such standard. And, to afford ample opportunity for a compliance with such order, the commission was authorized, by section 3 of the act, to fix a time within which the order should be complied with. An order was made by the commission prescribing a uniform standard of equipment, and, long prior to the date of plaintiff's injury, the time for compliance with the standard so fixed and prescribed was extended until some time in 1916; the precise date is not important. Plaintiff received his injury in June, 1914. The precise contention of defendant is that the order of the commission extending the time for compliance with the prescribed uniform equipment suspended the supplemental act in its entirety, and that the provisions of section 2, declaring it unlawful for any railroad company to employ in its train service after July 1, 1911, any car not equipped as therein provided, were under suspension and not in force at the time plaintiff was injured. We are unable to concur in this contention.

Section 2 of the act, which defendant insists was under suspension, provides "that on and after July first, nineteen hundred and eleven, it shall be unlawful for any common carrier subject to the provisions of this act to haul, or permit to be hauled or used on its line any car subject to the provisions of this act not equipped with appliances provided for in this act, to wit: All cars must be equipped with secure sill steps and efficient hand brakes; all cars requiring secure ladders and secure running boards shall be equipped with such ladders and running boards, and all cars having ladders shall also be equipped with secure hand holds or grab irons on their roofs at the tops of such ladders. * * *"

Section 4 provides a penalty for a violation of the act, and for the recovery thereof as provided by the act of 1893.

The sole purpose of this part of the statute was to impose upon the railroads the absolute duty of maintaining their car equipments in safe condition for use. The language is clear and positive, and declares that on and after the date named it shall be unlawful to use such cars when not so equipped. It will not, as we read it, admit of qualification by judicial construction, and was intended to apply to cars in use at the time the act was passed as well as those thereafter brought into service. Section 3, upon which defendant relies in support of the contention that section 2 was under suspension, relates to an entirely different branch of the same subject, and clearly was not intended as a qualification of the express provisions of section 2. It was evidently deemed that the safety of the traveling public, as well as railroad employees engaged in the train service, would best be protected by some uniform method or standard of car equipment applicable to all interstate roads, and to that end authority to fix such standard was, by section 3, vested in the interstate commission. The reasons for the requirement of uniformity in equipment are plain. The cars of different roads operating throughout the states are promiscuously hauled, all are not equipped in the same manner; and a train composed of cars differently supplied with the appliances referred to in the statute, results in confusion to the employees, and adds materially to the dangers connected with their work. With a uniformity of equipment confusion is eliminated and danger of injury lessened. So it seems clear that the sole purpose of section 3 was to authorize the commission to prescribe a uniform standard for the equip-

ment of the cars of all the interstate railroads, and to require conformity therewith by such roads. The commission was, by the terms of the statute, required to formulate rules fixing such standard within the time stated therein, and its order in the premises was given the force and effect of law. Congress had in mind that it would as to some of the roads be a practical impossibility to at once meet the demands of the new standard, and the commission was further authorized to extend to them such time as would afford full opportunity of compliance. But in so providing it clearly was not the intention that during the period taken for installing the standard equipment defective cars might be used and employed in the train service; nor was it intended that during that period section 2 of the act should remain inoperative. If such had been the intention, then that section might well have been omitted altogether and section 3 made the substance and embodiment of the whole enactment. For then its operation would have been limited and in harmony with the contention of defendant, namely, as an enactment requiring within such time as the interstate commission might fix therefor all railroads to equip and conform their cars to the standard there provided for. This view of the act cannot be adopted without doing violence to section 2. Congress intended that section to be a part of the statute, and the clear language thereof cannot be rejected, or held inoperative pending the installation of the standard of equipment to be ordered by the commission without running counter to the main purpose of the act. The section must therefore stand, as a part of the statute, and be construed as imposing the duty upon railroads of maintaining their car equipment in secure and safe condition for use after July 1, 1911. Section 3 must be construed as a requirement of a uniform standard for such equipment, and that the extension of time within which to conform thereto has no reference to and does not relieve from the duty to maintain present equipment in secure and safe condition.

Order reversed.