CALHOUN, Administratrix, Respondent, vs. GREAT NORTH-
ERN RAILWAY COMPANY, Appellant.

*January 11—February 1, 1916.*

*Railroads: Negligence: Death of switchman: Defective running board:
Evidence: Sufficiency: Proximate cause: Inspection: Federal
statutes, when applicable: Pleading: Interstate commerce: Sur-
vival of actions: Separate recovery for suffering: Double recov-
ery: Dependents: Appeal: Verdict, when conclusive.*

1. In an action against a railway company for death of a switchman
   who fell from the top of a car, findings by the jury to the effect
   that defendant negligently permitted the end of one of the boards
   of the running board of the car to project above the adjacent
   board to such an extent as to constitute a defect or insufficiency
   in the car, and that the fall of the deceased from the car was
   caused by his stumbling over the projecting board end, are *held*
   to have such support in the evidence that they should not be dis-
   turbed.

2. Under the federal Employers' Liability Act (35 U. S. Stats. at
   Large, 65, ch. 149, sec. 1) giving to a railway employee engaged
   in interstate commerce a right to recover for injury or death
   "resulting in whole or in part" from negligence of the railway
   company, the common-law rule as to proximate cause has no
   relevancy, it being sufficient that the defect or negligence pleaded
   contributed in any manner to cause the injury.

3. The Safety Appliance Act (36 U. S. Stats. at Large, 298, ch. 160,
   sec. 2) imposes an absolute duty upon common carriers to equip
   their cars with "secure running boards;" and in an action for
   death caused by a defective running board it is no defense that
   defendant had made proper inspection, if the board was in fact
   defective.

4. Where, in an action for the death of a railway employee, the an-
   swer alleged that deceased was at the time of the injury engaged
   in interstate commerce and that fact was established upon the
   trial, it was the duty of the court to apply the federal acts.

5. Under 36 U. S. Stats. at Large, 291, ch. 143, sec. 9, providing for
   the survival of any right of action given by the act to a person
   suffering injury, a cause of action for pain and suffering of a de-
   ceased railway employee survived to his mother, the sole benefi-
   ciary, and a recovery of the amount of her pecuniary loss re-
   sulting from his death and also of damages for his pain and
   suffering between the time of injury and death was not a double
   recovery for the same injury.

6. The trial court having in such case sustained the findings of the jury on the question of damages, and there being ample evidence to support them, they cannot be disturbed on appeal on the ground that the mother was not dependent upon the deceased.

BARNES, J., WINSLOW, C. J., and MARSHALL, J., dissent.

APPEAL from a judgment of the circuit court for Douglas county: CHESTER A. FOWLER, Judge. *Affirmed.*

This action was brought by the plaintiff as administratrix of the estate of James N. Calhoun, her son, who was killed while in the employ of the defendant. The defendant was engaged in the business of interstate transportation and the deceased was in its employ as switchman in its yards at Superior, Wisconsin.

The negligence alleged is in substance defective coupling appliances, unusual and extraordinary jerking or jarring of the car upon which the deceased was riding, and defective running board upon the car from which deceased fell.

Two causes of action are set up in the complaint based upon the same grounds of negligence, one being for damages which the plaintiff, mother of deceased, sustained by reason of the death of her son, and the other for conscious pain and suffering between time of injury and death.

The defendant answered denying negligence and averring assumption of risk and concurrent negligence of the deceased. Motions for nonsuit and directed verdict by the defendant were denied.

It was conceded on the trial that the case was one under the federal Employers' Liability Act of April 22, 1908 (35 U. S. Stats. at Large, 65, ch. 149, sec. 1), the provisions of which material to this case are as follows:

"That every common carrier by railroad while engaging in commerce between any of the several states or territories, . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none,

then of such employee's parents, . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, . . ."

Also Safety Appliance Act of April 14, 1910 (36 U. S. Stats. at Large, 298, ch. 160, sec. 2, 1 Fed. Stats. Ann. (1912 Supp.) sec. 2, p. 336), as follows:

"That on and after July first, nineteen hundred and eleven, it shall be unlawful for any common carrier subject to the provisions of this act to haul, or permit to be hauled or used on its line any car subject to the provisions of this act not equipped with appliances provided for in this act, to wit: all cars must be equipped with secure sill steps and efficient hand brakes; all cars requiring secure ladders and secure running boards shall be equipped with such ladders and running boards. . . ."

Also act of April 5, 1910 (36 U. S. Stats. at Large, 291, ch. 143, sec. 9), as follows:

"That any right of action given by this act to a person suffering injury shall survive to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee, and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, but in such cases there shall be only one recovery for the same injury."

The jury returned the following verdict:

"(1) Did the end of one of the boards of the running board project above the adjacent board to such an extent as to constitute a defect or insufficiency in the car?    A. Yes.

"If to question 1 you answer 'Yes,' answer this:

"(2) Did the defendant's servants use ordinary care in permitting the defect or insufficiency thus found to be in existence at the time of the injury?    A. No.

"(3) Did the deceased stumble over the projecting board end, and as a result of such stumbling fall from the car?    A. Yes.

"(4) Was there any want of ordinary care on the part of Mr. Calhoun that proximately contributed to produce his death? A. No.

"(5) What sum will compensate the mother of Mr. Calhoun for the pecuniary loss sustained as a result of his death? A. $2,500.

"(6) What sum will compensate for the pain and suffering by Calhoun from his injury to his death? A. $500."

Both parties moved for judgment on the verdict. Counsel for defendant also moved for new trial. Judgment was rendered in favor of the plaintiff upon the verdict, from which this appeal was taken.

*J. A. Murphy,* for the appellant.

*W. P. Crawford,* for the respondent.

KERWIN, J. 1. The serious question in this case is whether there is sufficient evidence to support the verdict. The jury found that the end of one of the boards of the running board projected above the adjacent board to such an extent as to constitute a defect or insufficiency in the car; that deceased stumbled over the projecting board end and as a result of such stumbling fell from the car; that defendant was negligent in allowing the defect to be in existence at the time of the injury.

The deceased was in the employ of defendant as a switchman in its yards and at the time of injury was riding on top of the car from which he fell while several cars, including the one on which deceased was riding, were being pushed by an engine northward. There was one car in front or north of the one on which deceased was riding and this car was to be "kicked" onto a sidetrack. The process of kicking the car onto a sidetrack as it was being done at the time of the injury is accomplished by uncoupling the car to be kicked, increasing the speed so as to give the car sufficient momentum to carry it onto the sidetrack when detached from the train,

and then decreasing the speed of the train from which the kicked car is detached so as to allow it to pass away from the train and onto the sidetrack. The evidence shows that the kicking operation was carried on without any sudden jerk of the car upon which deceased was riding; that the running board was about twenty-three inches wide, constructed of three narrow boards placed close together on the top of the car; that the alleged defect consisted in the end of one of these boards being from one fourth to five eighths of an inch higher than the end of the adjacent board where the two boards met at about the middle of the car, the car being about thirty-three feet long. The string of cars was being pushed northward by an engine on a slight down grade. The deceased fell from the north end of the car upon which he was riding while the kicking operation was going on, or about the time the car immediately in front of the one upon which he was riding was kicked onto the side or repair track. The accident occurred on a cold December night, and there was frost on the running board which showed a track going north about two feet south of the defect or projecting end of the board and another some two or three feet north of the defect. The theory of respondent's counsel is that deceased was moving northward on the car during the kicking operation and stubbed his toe, throwing him forward, and before he could recover himself was thrown off the car, and that the decrease of speed, sudden or otherwise, accelerated his motion forward. The usual practice in kicking off a car is to pull the pin between the two cars, and when the uncoupling is made to give the signal to the engineer, who increases his speed and then makes a stop, and thereby kicks off the car to be spotted. There was evidence that there were no footprints at the point where the end of the board projected and that north of the projection there were footprints, indicating that the deceased proceeded north after passing over the defect.

There is no direct evidence that the deceased stubbed his

toe on the end of the projecting board and was thereby caused
to stumble forward and off the car, but it is argued by re-
spondent's counsel that in view of the tracks in the frost and
the operation of kicking at or about the time deceased fell,
the jury was entitled to find that the defect caused the fall,
consequent injury, and death, while on the part of appellant
it is insisted that there is not sufficient evidence to support
the verdict on the point independent of the evidence of the
fireman, who testified that deceased admitted shortly after he
fell that he slipped and fell; that he went to get the brake and
slipped and fell off.  It is argued by appellant that the un-
disputed admission of the fireman, together with all the other
evidence in the case, shows conclusively that the deceased did
not stub his toe and fall on account of the projecting board
and that there is no evidence to support the verdict.

. The court below held in a written opinion in the record
that the credibility of the evidence of the fireman as to the
declarations of deceased was for the jury; that the evidence
was not free from suspicion and the appearance of the wit-
ness not the best.   The trial court also held that the jury had
a right to infer, from the footprints upon either side of the
projecting board end being so far apart, that deceased did not
step over the board end in an ordinary or natural manner,
and that it is hard to account for this long space between the
footprints except upon the theory that the air brakes suddenly
stopped the car just as deceased had his foot where it last
rested before the projection, with the result that he was at
this point thrown violently forward and took the long stride
in an attempt to recover himself, or hit his toe on the board
end as he was traveling north on the car and this caused him
to lurch forward and take a long step to recover himself.

The evidence is discussed by counsel on both sides at con-
siderable length, and we must say it is a rather close question
whether it is sufficient to support the verdict, but the court
below upheld the jury in finding the evidence sufficient, and

we cannot say that it was clearly wrong, therefore under repeated decisions of this court the findings must be upheld.

2. It is further insisted by counsel for appellant that it is established in the case without dispute that the day before the accident the car was inspected, repaired, and put in good condition. The evidence, however, is not without dispute as to whether there was a defect in the running board at the time of the accident.

There is also much argument by counsel on both sides upon the common-law rule of proximate cause, which has no relevancy to the case. It is conceded that the case is governed by the federal act, which fixes right of recovery for injury "resulting in whole or in part" from negligence.

It is sufficient that the defect contributed in any manner to cause the injury. *Alexander v. M., St. P. & S. S. M. R. Co.* 156 Wis. 477, 146 N. W. 510.

The Safety Appliance Act passed in April, 1910, and quoted from in the statement of facts, also imperatively requires common carriers to equip their cars with "secure running boards." This statute imposes an absolute duty upon the common carrier to comply with the statute. *Delk v. St. L. & S. F. R. Co.* 220 U. S. 580, 31 Sup. Ct. 617. That defendant made proper inspection is no defense if the running board was in fact defective. *St. Louis, I. M. & S. R. Co. v. Taylor,* 210 U. S. 281, 28 Sup. Ct. 616.

Some point is made by counsel for appellant that the federal acts were not pleaded. But the answer alleges that deceased was at the time of the injury engaged in interstate commerce and the facts were established upon the trial, and the concession of counsel for appellant brings the case within the federal acts, and it was therefore the duty of the court to apply the law. *Grand Trunk W. R. Co. v. Lindsay,* 233 U. S. 42, 34 Sup. Ct. 581.

Counsel for appellant claims there was a double recovery and that there can be no recovery for pain and suffering.

Under the act of April 5, 1910 (36 U. S. Stats. at Large, 291, ch. 143, 1 Fed. Stats. Ann. (1912 Supp.) p. 335), the cause of action for pain and suffering survives to the plaintiff. This statute provides for the survival of any right of action given by the act to a person suffering injury. The statute has been construed in *Kansas City S. R. Co. v. Leslie,* 238 U. S. 599, 35 Sup. Ct. 584, and *St. Louis, I. M. & S. R. Co. v. Craft,* 237 U. S. 648, 35 Sup. Ct. 704. In the latter case it is said:

"The conclusion is unavoidable that the personal representative is to recover on behalf of the designated beneficiaries, not only such damages as will compensate them for their own pecuniary loss, but also such damages as will be reasonably compensatory for the loss and suffering of the injured person while he lived."

The recovery is not double. Each cause of action constitutes a separate item of damages.

It is further argued by counsel for appellant that the plaintiff here and sole beneficiary was not dependent upon the deceased and therefore no damages are recoverable. The court below sustained the findings of the jury on the question of damages and there is ample evidence to support them. Under such circumstances the findings cannot be disturbed. *Hewitt v. Southern Wis. R. Co.* 159 Wis. 309, 150 N. W. 502; *Behling v. Wis. B. & I. Co.* 158 Wis. 584, 149 N. W. 484.

We find no prejudicial error in the record.

*By the Court.*—The judgment is affirmed.

BARNES, J. (*dissenting*). The only theory on which plaintiff can recover is that deceased stubbed his toe against the raised end of one of the footboards on the top of the car and that this caused him to lurch forward a distance of sixteen and one-half feet and over the end of the car. There is no evidence that deceased did stub his toe and no evidence as to what caused him to fall. There is evidence that foot-

prints were discernible on the running board which were wide apart, and it is said that this evidence was sufficient to warrant the jury in finding that the accident happened in the manner stated. There is a possibility that the injury occurred in this way. The probabilities are that it did not. It was incumbent on the plaintiff to show by a preponderance of the evidence that the defect complained of was in some degree responsible for the death of Mr. Calhoun. It seems to me that the cause of his death rests in pure conjecture.

WINSLOW, C. J. I concur in the foregoing dissent.

MARSHALL, J. I concur in the foregoing dissent.