Sullivan, Administrator, Respondent, vs. Minneapolis, St. Paul & Sault Sainte Marie Railway Company, Appellant.

*March 6—June 19, 1918.*

*Master and servant: Injury to brakeman: Defective handhold on car: Evidence: Sufficiency: Interstate commerce: Federal statutes: Proximate cause: Appeal: Review: Motion for new trial, when unnecessary: Expert testimony: Hypothetical questions: Assuming facts: Province of jury: Opinion as to cause of death: Damages: Competency of evidence: Special verdict: Instructions to jury: Burden of proof.*

1. In an action for the death of a brakeman, although there was no eye-witness of the accident, the evidence is *held* to sustain findings by the jury that he was injured by a fall from defendant's freight car caused by the giving way of a defective handhold, and that his death was caused in whole or in part by the injuries so sustained.

2. Errors committed by the trial court, such as the improper admis-

Sullivan v. Minneapolis, St. P. & S. S. M. R. Co. 167 Wis. 518.

sion of testimony, may be reviewed on appeal from the judgment although there was no motion for a new trial, such motion being necessary only to preserve for review errors committed by the jury.

3. A party has the right to the opinion of an expert witness on the facts of the case as he claims them to be, and may propound hypothetical questions assuming as proved all facts which the evidence tends to prove.

4. Notwithstanding the general rule that an expert witness should not be permitted to give his opinion upon the ultimate fact to be found by the jury, when such ultimate fact is a scientific question, as whether or not the death of a person was the result of a fall which he sustained, the opinion of an expert may be given without invading the province of the jury.

5. In an action for the loss to his mother resulting from a brakeman's death, a sister of the deceased was properly permitted to testify that he had expressed his intention and purpose of remaining single and not marrying.

6. In an action for the death of a brakeman who was injured by reason of the giving way of a defective handhold on a freight car in interstate commerce, such action being governed by the federal safety appliance and employers' liability acts, a question submitted in the special verdict as to whether his death was "caused in whole or in part by the injuries so sustained by him" is *held* preferable in form to a question proposed by defendant, "Was the death . . . caused by any injury suffered at the time . . . or was it caused by disease?"

7. An instruction as to direct and remote cause, in connection with the question submitted as above stated, was not necessary and would have been out of place, proximate cause having nothing to do with liability under the federal acts.

8. If elucidation of a question in a special verdict is deemed necessary by counsel, they should submit a request therefor.

9. Where the charge to the jury states that the burden of proof is upon the plaintiff and that it is incumbent upon him to establish the fact, as he claims it to be, to the satisfaction of the jury by a preponderance of the credible evidence in the case, the court need not add that the jury should be satisfied "to a reasonable certainty," that phrase being mere surplusage when used in such connection.

APPEAL from a judgment of the circuit court for Douglas county: E. B. BELDEN, Judge. *Affirmed.*

This action was brought by the administrator of the estate

Sullivan v. Minneapolis, St. P. & S. S. M. R. Co. 167 Wis. 518.

of Bernard M. Conway, deceased, to recover damages for personal injuries sustained by said deceased while in the employ of the defendant as a brakeman in its yards in the city of Superior on the 20th day of March, 1916, and for the loss resulting to Bridget Conway, his mother, on account of his death resulting from the accident.    The case was tried before a jury and the following special verdict returned:

"(1) Was the deceased, Bernard M. Conway, injured by falling from defendant's car?    A. Yes.

"(2) If you answer the first question 'Yes,' then answer this: Was such fall caused in whole or in part by the grab iron in question giving way?    A. Yes.

"(3) Was the grab iron in question defective at the time in question?    A. Yes.

"(4) If you answer the first, second, and third questions 'Yes,' then answer this: Did the fact that such grab iron was defective contribute in whole or in part to cause Conway's injuries complained of?    A. Yes.

"(5) If you answer the fourth question 'Yes,' then answer this: Was Conway's death caused in whole or in part by the injuries so sustained by him?    A. Yes.

"(6) Did any want of ordinary care on the part of Conway proximately contribute to cause his injuries and death? A. No.

"(7) What sum of money will reasonably compensate Bridget Conway, mother of Bernard M. Conway, for her pecuniary loss sustained by his death?    A. $2,000.

"(8) What sum of money will be reasonable compensation for the physical and mental pain and suffering endured by Conway from the time of his injury, if he was so injured, to the time of his death, as the result of such injury? A. $1,500."

From a judgment rendered in favor of the plaintiff on such special verdict the defendant appealed.

For the appellant there was a brief by *Luse, Powell & Luse* of Superior, attorneys, and *A. H. Bright* and *J. L. Erdall* of Minneapolis, Minnesota, of counsel, and oral argument by *L. K. Luse.*

*W. P. Crawford* of Superior, for the respondent.

The following opinion was filed April 3, 1918:

Owen, J. The defendant moved to direct a verdict in favor of the defendant; for judgment notwithstanding the verdict; to change the answer "Yes" to the first question of the special verdict to "No;" to change the answer "Yes" to the fourth question of the special verdict to the answer "No;" and the answer "Yes" to the fifth question of the special verdict to the answer "No." At all times the appellant has maintained that the evidence was not sufficient to sustain the verdict or a judgment in favor of the plaintiff, and that the plaintiff utterly failed to make out a case against the appellant. This calls for a brief review of the evidence to determine whether the verdict has any support therein.

It appears that the deceased was a brakeman in the employ of the defendant. At about 2 o'clock a. m. March 20, 1916, he was assisting in taking a drag of cars from the defendant's Belknap yard in the city of Superior to the South Shore Railway Company's yard in the same city. He was the rear brakeman on this drag of cars. It was passing from a lead or switch track to the main-line track. There were eight or nine cars in the drag. It was the duty of the deceased to close the switch after the cars had passed onto the main track. While the cars were passing over the switch Conway (or his lantern, as it was dark) was seen on top of the cars near the rear end of the drag. He would naturally be in this locality at the time in order to descend from the rear car and close the switch when the drag had passed over and onto the main track. Suddenly his lantern was seen to go out, and nothing more was seen or heard of Conway until about ten minutes later, when he climbed into the engine of a rear drag of cars following along behind the one on which he was working, with his unlighted lantern in one hand and a handhold or ladder round in the other. He was very pale and

in a dazed and semi-conscious condition, but with no scratch, bruise, scar, or other external evidence of injury upon him. No evidence was given as to what he said. He "crumbled up" and was assisted upon the fireman's seat box. He was rubbing his right leg and appeared weak and somewhat faint—not a dead faint. He was taken by this engine to the depot, where he was carried to an ambulance and taken to the hospital.

Appellant concedes that the evidence showed that a handhold in the ladder upon C. P. car No. 89652 was broken off about half way up on the car and that this handhold was the one which Conway had in his hand when he came into the cab of the engine. It is also conceded that this car was in interstate commerce. There was also evidence that this car was near the rear end, if not the last car, in the drag. There was a fresh break on one side of the ladder round and an old break with rust on the other. When he was taken to the hospital he was suffering from a brain lesion. He remained in the hospital until the 13th day of April. He was not cured or well when discharged from the hospital and was never well again. He was later committed to an insane hospital at Newberry, Michigan, at which institution he died on the 30th day of July, 1916. The cause of his death was given as "paralysis of the insane."

The medical experts who testified in the case agreed that a man may receive an injury on the head from a fall without any exterior marks on his person; that this fall, slight or great, may be sufficient to produce a brain lesion and may result in insanity and death.

It is a very logical inference from the facts proved in this case that a defective ladder round or handhold on C. P. car No. 89652 broke and gave way while Conway was either ascending or descending the car in the performance of his duties, and that as a result thereof Conway fell to the ground and was injured, and that the finding of the jury to the ef-

fect that Conway was injured by falling from defendant's car is not without evidence to support it.

It was the contention of the defendant that the deceased was a victim of syphilis, and that his death was due to syphilis' and not to injury. The evidence is quite persuasive that he did have syphilis. But it was not at all conclusive that his death was not due, in whole or in part, to the injuries received by him. It is in evidence that when Conway went to work that night he appeared to be in proper mental and physical condition for the performance of his duties. It appears that he did satisfactorily perform the duties of a brakeman until the exact moment of the happening of this accident, and immediately upon the happening of the accident he became incompetent and incapacitated for work of any kind. Within a very short time after his arrival at the hospital it was determined by the doctor called to attend him (who, by the way, was in the employ of appellant) that he was suffering from a brain lesion. Appellant contends that the brain lesion might have resulted from syphilis. This appears to be true. It might have resulted from syphilis. It is also true that it might have resulted from the injury sustained by him, according to all the medical experts who testified in the case. The question submitted to the jury was whether his death resulted in whole or in part from the injury sustained. That was the question they were called upon to determine. The evidence furnishes some basis for their conclusion that the accident and resulting injury had something to do with his death. We may confess strong suspicions that his syphilitic condition was principally, if not wholly, responsible for his death. We cannot say, however, that there was no evidence in the case from which the jury might find that his death was due either wholly or in part to the accident. We therefore think that the verdict of the jury should not be disturbed, nor should the court have granted appellant's motion for direction of a verdict.

Appellant urges upon our attention various asserted errors of the trial court in the improper admission of testimony offered by the plaintiff.    Counsel for respondent vigorously protests that errors committed by the court in this particular cannot now be considered because no motion for a new trial was made in the court below.    Counsel is in error.    It is the settled law of this state that such errors may be reviewed by this court upon an appeal from the judgment in the absence of a motion for a new trial.    *Cotton v. Watkins,* 6 Wis. 629; *Hayward v. Ormsbee,* 11 Wis. 3; *Kirch v. Davies,* 55 Wis. 287, 11 N. W. 689; *Anstedt v. Bentley,* 61 Wis. 629, 21 N. W. 807; *Reed v. Madison,* 85 Wis. 667, 56 N. W. 182. A motion for a new trial is only necessary to preserve for review errors committed by the jury.    Errors committed by the court can be reviewed without such motion.    *Plankinton v. Gorman,* 93 Wis. 560, 562, 67 N. W. 1128.    Perhaps certain language in *Kopplin v. Quade,* 145 Wis. 454, 130 N. W. 511, and *Beebe v. M., St. P. & S. S. M. R. Co.* 137 Wis. 269, 118 N. W. 808, justifies a contrary inference. There was no intention on the part of the court in those cases to disturb the long established law on the subject, and expressions in those opinions tending to cast doubt upon the matter are disapproved.

Certain hypothetical questions were propounded by the respondent to expert witnesses in which it was assumed that deceased had fallen from a car and sustained an injury. Appellant's counsel objected to these questions, contending that it had not been proven in the case that the deceased fell from a car or sustained an injury.    We think the objection was properly overruled.    A party has the right to the opinion of an expert witness on the facts of the case as he claims them to be, and he may propound hypothetical questions assuming as proved all facts which the evidence in the case tends to prove.    *Quinn v. Higgins,* 63 Wis. 664, 24 N. W. 482.    It was the plaintiff's theory that the deceased sustained an injury by reason of falling from a box car.    The evidence

introduced by the plaintiff, which was before the court at the time the questions were propounded, not only justified such conclusion, but, as we have seen, was sufficient to sustain an affirmative finding of the jury upon that fact.    The plaintiff certainly was entitled to the opinion of experts based upon the assumption that such fall and injury had been sustained by the deceased.

Certain hypothetical questions were propounded asking expert witnesses to "state whether or not, in your opinion, his death was the result of the fall which I described in my former question."    Objection was made to these questions that they were incompetent and constituted an invasion of the province of the jury.    It is a general rule that an expert witness should not be permitted to give his opinion upon the ultimate fact to be found by the jury.    It is also another well settled general rule that an expert may give his opinion upon any question within the realm of scientific knowledge. When the ultimate fact to be found by the jury is a scientific question, these two principles necessarily come into collision and one or the other must give way.    However, it is unnecessary for us to philosophize upon the question as to which should be given the right of way under the circumstances, because the form of the question here under consideration was expressly sanctioned in *Crouse v. C. & N. W. R. Co.* 102 Wis. 196, 78 N. W. 446, 778.

Error is also assigned because a sister of the deceased was permitted to testify that he had expressed his intention and purpose of remaining single and not marrying.    The evidence was admissible.    *Bright v. Barnett & Record Co.* 88 Wis. 299, 60 N. W. 418.

Counsel for defendant requested the court to submit to the jury, as a part of the special verdict, the following question:

"Was the death of Bernard M. Conway caused by any injury suffered at the time of the breaking of the ladder round, or was it caused by disease?"    The court refused the request and submitted instead the following question:    "Was Con-

way's death caused in whole or in part by the injuries so sustained by him?" This is assigned as error.

The question submitted calls for the direct determination of the ultimate fact upon which liability of the defendant is predicated by the federal Safety Appliance Act (36 U. S. Stats. at Large, 298, ch. 160) and the federal Employers' Liability Act (35 U. S. Stats. at Large, 65, ch. 149), which govern the case. The question suggested could have been answered in but one of three ways: (a) By the injury; (b) by disease; or (c) by both. If the jury were of the opinion that the death of deceased resulted solely from disease, they could not have answered the question submitted as they did. The answer to the question submitted effectively negatives any possibility that by answering the question requested they would have found that the death of the deceased resulted from disease, and any other answer would amount to a finding that his death was due in whole or in part to the injury. There is really very little difference in the ultimate effect of the two questions, but the question submitted calls for a direct finding upon the issue involved and is preferable. Counsel concede in their brief that "possibly the question submitted by the court would have been sufficient if the instructions of the court had covered the question of direct and remote cause, but such instructions were not given." This court has held that proximate cause has nothing to do with liability under these federal acts (*Calhoun v. G. N. R. Co.* 162 Wis. 264, 156 N. W. 198) and an instruction upon that subject would have been out of place. If elucidation of the question submitted was deemed necessary, counsel should have submitted a request upon that subject, which they failed to do.

Counsel for defendant requested the court to charge the jury, in connection with question 5, that "If you are not satisfied with reasonable certainty that his death was caused by such an injury you should answer question 5 No." The

court refused this instruction, but did charge the jury that "If you are satisfied by the preponderance of credible evidence that Conway's death was caused in whole or in part by injury sustained by a fall as alleged by plaintiff you should answer this question Yes." The jury was also informed that the burden of proof as to such question was upon the plaintiff, and in the early part of the charge it was said:

"When I instruct you that the burden of proof rests upon one party or the other to the action I mean that it is incumbent upon such party to establish the truth of the proposition involved, as he claims it to be, to your satisfaction by the preponderance of the credible evidence in the case."

Appellant criticises the instruction of the court with reference to this question because the court did not say that the jury should be satisfied *"to a reasonable certainty."* This phrase is not essential. This court has never held it to be indispensable to a correct charge upon the question of the proper degree of proof that the jury should be satisfied with reasonable certainty or to a reasonable certainty. It was held not to be error to so charge in *Pelitier v. C., St. P., M. & O. R. Co.* 88 Wis. 521, 528, 60 N. W. 250, because, as there said, if the jury was satisfied of a proposition it must be reasonably certain of it. The phrase "with reasonable certainty" is mere surplusage when used in such connection and adds nothing to the statement that the jury should be satisfied of the existence of a fact before it can so find.

The other errors complained of do not seem to merit special treatment. They have all been considered. No reversible error has been found, and the judgment should be affirmed.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs and costs of motion, on June 19, 1918.