### ARTHUR F. SLATER v. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY.[1]

#### July 23, 1920.

#### No. 21,766.

**Federal Safety Appliance Act — running board — obstruction caused by trespasser.**

    The Federal Safety Appliance Act, which requires cars operated in interstate commerce to be equipped with secure running boards, was not violated where it appears that a trespasser, without the knowledge of the railroad or its servants, displaced an ice bunker cover so that it projected upon the running board causing plaintiff, a brakeman, to trip over it, the running board itself remaining all the time mechanically perfect and secure.

Action in the district court for Ramsey county to recover $50,000 for injuries received while in defendant's employ. The answer set up a settlement with plaintiff, for the sum of $11,500. The case was tried before Michael, J., who at the close of the testimony granted defendant's motion for a directed verdict. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*Samuel A. Anderson,* for appellant.

*Richard L. Kennedy* and *Donald Evans,* for respondent.

    1 Reported in 178 N. W. 813.

HOLT, J.

Action by a brakeman to recover damages for injuries received while employed in moving an interstate train for defendant, a railway company. When the evidence was in, the court directed a verdict in favor of defendant, and plaintiff appeals from an order denying his motion for a new trial.

The sole ground of negligence alleged against defendant was a defective and insecure running board on a refrigerator car in the train, the defect not being in the running board itself, but because the cover of the ice bunker had been displaced so that it protruded upon the running board. The answer denied negligence and set up as defenses contributory negligence, assumption of risk and a settlement and release. The reply alleged that the settlement and release was procured by fraud.

The train in question left St. Paul, this state, after dark on December 19, 1917, destined for Sioux City, Iowa. Plaintiff was the head brakeman. Between 3 and 4 o'clock the next morning, soon after the station at Kasota had been passed, plaintiff, provided with a lantern, undertook to reach the engine by walking on the running boards on top of the cars, and, in stepping from the running board of an ordinary freight car to that of a refrigerator car ahead, he tripped upon an obstruction on the latter and fell between the cars in such a manner that the wheels on the left side of the train severed both feet above the ankles. While at the hospital defendant's agent obtained a settlement and release for $11,500. Plaintiff invested the money in real estate and mortgages. The chief reason assigned by the trial court for directing a verdict was that plaintiff, having the undisputed funds obtained by the settlement within his control, could not maintain the suit without offering to restore the same to defendant.

We need not determine whether the reason assigned by the learned trial court for directing the verdict was valid, nor is it necessary to consider whether the evidence would warrant a jury in setting aside the release, for a majority of the court are convinced that there is no proof of liability or actionable negligence against defendant. Plaintiff's testimony leaves it uncertain whether he stepped upon or beside the running board of the refrigerator car, but we shall assume that the jury could

have found that he placed his foot on the running board and tripped over an obstruction thereon. The evidence is undisputed that the running board was secure and in perfect condition. At the rear end of this refrigerator car, as located in the moving train, and between the running board and the left side of the car, is the ice box, or bunker, with an opening extending from about six inches from the running board to within a few inches of the side of the car, or about three feet. It is about two feet wide. The walls of the opening extend a few inches above the roof of the car. A cover with a rim fits around the extended walls of the bunker. One end of the cover, when in place, extends about two inches under the running board and the other end is fastened by a hasp and curved pin near the edge of the roof, where the upper rung or handhold of the side ladder runs down. The evidence leaves it clear that a tramp or trespasser boarded the train at some point on the route before the accident happened, unfastened this cover, crept down in the bunker, and, in so doing, left the cover displaced, for, after the accident, when the employees of defendant, who had been directed to inspect the cars in the train, and especially this refrigerator, undertook to replace and properly fasten the cover, this person shouted and immediately jumped out of the bunker and slid off the car on the ladder referred to.

It cannot be contended that any case of common-law negligence was made out. There is no testimony tending to show that any one of the train crew knew of the tramp's presence, or ought to have discovered his meddling with the cover. Plaintiff must, therefore, rely entirely upon the Act of Congress of April 14, 1910, known as the Safety Appliance Act (8 Comp. St. 1916, § 8618, pp. 9358-9364). The language pertinent here reads as follows: "All cars requiring  *  *  *  secure running boards shall be equipped with  *  *  *  such running boards." It is thoroughly settled that a violation of this statute creates an absolute liability. Burho v. Minneapolis & St. L. R. Co. 121 Minn. 326, 141 N. W. 300, and the Federal cases there cited. The question then remains: Does the fact that a trespasser surreptitiously has placed a temporary obstruction like a loose board or cover upon a running board of a railroad car show a violation of the act referred to? We think not.

The running board itself was secure and mechanically perfect. There

is no hint of any defect therein, either as to material, workmanship or design. The statute ought not to be construed as guaranteeing against the acts of trespassers, at least not unless such acts render the running board itself mechanically insecure. Sleet makes a running board insecure or unsafe for use, yet, we apprehend, it will not be contended that the Safety Appliance Statute is violated if a brakeman slips upon a running board coated with ice during a sleet storm. Risks of that sort, as well as those caused by the casual acts of trespassers, must be held to be risks of the employment assumed by the employee, and not intended to be covered by the said act of Congress. This act relates to the equipment and appliances which a railway company, engaged in interstate commerce, must provide, and not to the imposition thereon of foreign objects by others not connected with the company and beyond its control. The law, so far as it relates to running boards, deals solely with the mechanical construction and maintenance of secure running boards. This may mean that it shall be of a safe width, solidly fastened, level, and of material giving fair footing. If more than this, the statute makes the railroad an insurer of its employees, not only against insecure running boards, but against every act of an outsider or trespasser which, without in the least affecting the mechanical structure of a perfectly secure running board, makes its use dangerous by placing upon it some obstruction like a chunk of coal, wood or anything upon which a brakeman may trip, unbeknown to the railroad or its servants, or under such condition that failure to know thereof cannot impute negligence. We do not believe this was intended by the lawmakers.

The cases cited and relied on by plaintiff are all predicated upon some mechanical defect in the appliance or equipment demanded by the act. In Chicago, B. & Q. Ry. Co. v. U. S. 220 U. S. 559, 31 Sup. Ct. 612, 55 L. ed. 582, there was a failure to equip with power brake as required. A mechanical defect in the coupler was proven in Delk v. St. Louis & S. F. R. Co. 220 U. S. 580, 31 Sup. Ct. 617, 55 L. ed. 590. In Texas & Pac. Ry. Co. v. Rigsby, 241 U. S. 33, 36 Sup. Ct. 482, 60 L. ed. 874, and in Illinois Central R. Co. v. Williams, 242 U. S. 462, 37 Sup. Ct. 128, 61 L. ed. 437, handholds and ladders were insecurely fastened and gave way. The same was the case in Coleman v. Illinois Cent. R. Co.

132 Minn. 22, 155 N. W. 763; Cook v. Union Pac. R. Co. 178 Iowa, 1030, 158 N. W. 521, and in Galveston, H. & S. A. Ry. Co. v. Enderle, (Tex. Civ. App.) 170 S. W. 276. In Calhoun v. G. N. Ry. Co. 162 Wis. 264, 156 N. W. 198, the end of a plank in a running board projected above the end of the one it met, creating a defect of construction.

In the opinion of a majority of the court no violation of the Safety Appliance Act was shown, and the verdict directed was the only verdict that could be rendered.

The order is affirmed.