Westgard, Administratrix, Respondent, vs. Chicago, Milwaukee & St. Paul Railway Company, Appellant.

*March 14—April 11, 1922.*

Federal employers' liability: Duty of master to use safe appliances: Burden of showing proximate cause.

1. An employer must exercise ordinary care to supply machinery and appliances reasonably safe and suitable for the use of his employee, but is not required to furnish the latest, best, and safest appliances, or to discard standard appliances upon the discovery of later improvements, provided those in use are reasonably safe.
2. The federal Employers' Liability Act does not give a new cause of action which did not exist at common law, but modified the common-law rule with respect to the defenses of contributory negligence, assumption of risk, and negligence of a fellow-servant; and under the federal Safety Appliance Act an injured employee, to recover, must show that the improper equipment was the proximate cause of his injury.
3. A cake of ice had slipped from a slide leading from an ice-house to a refrigerator car which was being loaded, and came to rest on the top of the car instead of on the running-board, whereupon an employee proceeded to drag it to the ice bunker, and after he had moved it six or eight feet, in some unexplained way he lost his hold, fell off the car, and was killed. *Held,* even if the slide were insufficient, there was no causal connection between such insufficiency and the injuries of the deceased.

Owen, J., dissents.

Appeal from an order of the circuit court for Green county: George Grimm, Circuit Judge. *Reversed.*

Personal injury. This action was brought by the plaintiff to recover damages for the wrongful death of the deceased, Andrew Westgard, which death was claimed to be due to the negligence of the defendant. There is no dispute but that the rights of the parties are controlled by the federal Employers' Liability Act.

The deceased, Andrew Westgard, was in the employ of the defendant as a section laborer, and among other duties he was called upon to perform was to assist in the icing of

cars. On May 14, 1920, the deceased was so engaged. The track upon which the car was standing ran east and west. The icehouse from which the ice was taken was on the south side of the track. The car was spotted so that the middle of the car was about opposite the door of the icehouse, the platform of the icehouse being about on a level with the running-board on the top of the car. The work was customarily performed by taking cakes of ice on the platform of the icehouse, letting down a slide which was about eight feet eleven inches long, and at the time of the accident was twenty-nine inches wide. The running-board on the car was about eighteen to twenty-two inches wide and projected up from the roof of the car about two and seven-eighths inches. The slide was on hinges and dropped down so as to connect the platform of the icehouse with the running-board on the top of the car. There were four ice bunkers, two on each end of the car. The platform connected with the icehouse was sixteen feet and three inches long and from five to six feet in width. The roof of the refrigerator car was sloping so that the distance between the slide and the roof of the car at the point where it was nearest to the icehouse was greater than the distance between the slide and the roof of the car at the running-board, the roof of the car being sloping. The deceased attempted to pull a cake of ice from the platform attached to the icehouse along the slide to the running-board on the top of the car. The cake slid off from the slide onto the roof of the car. After it had come to a rest on the roof of the car the deceased started to drag the ice on the roof of the car, and had dragged it six or eight feet when in some way not explained he lost his hold, fell backwards off the car, striking a pile of ties, and receiving injuries from which he later died. The piece of ice was about twenty to twenty-four inches thick and weighed between three and four hundred pounds.

It is the claim of the plaintiff that the slide was defective in that it should have had guides or guards on its edge so as

to keep the cake of ice from leaving the slide on its way to the running-board. The jury found:

First. That the slide furnished by the defendant for conveying ice from the icehouse to the refrigerator car was reasonably sufficient for that purpose.

Fourth. That the deceased did not assume the risk of accident.

Fifth. That the deceased was not guilty of any want of ordinary care proximately contributing to his death, and assessed the damages at the sum of $7,000.

The defendant moved for judgment upon the verdict. The plaintiff moved to set aside the verdict and for a new trial, and from an order granted on plaintiff's motion setting aside the verdict and granting a new trial the defendant appeals.

For the appellant there was a brief by *H. J. Killilea* and *Rodger M. Trump,* both of Milwaukee, and oral argument by *Mr. Trump.*

*J. M. Becker* of Monroe, for the respondent.

ROSENBERRY, J.    The federal Employers' Liability Act provides that there may be a recovery "for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

The first question of the special verdict was: "Was the slide furnished by the defendant for conveying ice from the icehouse to the refrigerator car reasonably sufficient for that purpose?"

The court instructed the jury:

"It was not necessary for the defendant to furnish appliances and equipment for doing this work of the best or safest or most perfect kind. It fully complied with its duties if the slide that it furnished for conveying the ice from the icehouse to the car was reasonably sufficient for that purpose. The burden of proof is upon the negative,

and you must therefore be convinced by the evidence to a reasonable certainty that it was not reasonably sufficient in order to answer in the negative; otherwise you should answer it in the affirmative."

In granting the motion for a new trial the court said:

"An appliance may be suitable and reasonably sufficient as an instrument to accomplish a certain end; but to be 'sufficient' within the meaning of the law of negligence it must at the same time be reasonably safe. The instructions left the jury entirely in the dark on that subject, and it is very likely that they understood the term as commonly used instead of in its broader signification as used in the statute. The question referred to would in fact strongly tend to mislead the jury unless it was made clear by suitable instructions that to be 'reasonably sufficient' the appliance must not only be fairly adequate for doing the work, but that it must be reasonably safe for those using it as an instrumentality."

And because the jury were not so instructed the court set aside the verdict and granted a new trial. The defendant contends that the court erred in so doing. The rule of law is that the employer is under duty to exercise ordinary care to supply machinery and appliances reasonably safe and suitable for the use of the employee, but is not required to furnish the latest, best, and safest appliances, or to discard standard appliances upon the discovery of later improvements, provided those in use are reasonably safe. *Chicago & N. W. R. Co. v. Bower,* 241 U. S. 470, at p. 473 (36 Sup. Ct. 624). See, also, *Sea Board Air Line Ry. v. Horton,* 233 U. S. 492, at p. 501 (34 Sup. Ct. 635). We do not determine whether the court erred in setting aside the verdict on the ground stated. The order must be reversed on other grounds.

The sole question litigated upon the trial was the sufficiency of the appliance. The allegations of the complaint were

"that said trap platform [ice slide] was too narrow, defective and warped at one corner thereof where it lay on the roof of the car, thus producing an uneven, defective,

and too narrow platform upon which to slide ice cakes on to the foot-board of the car."

"That said injury which resulted in death was caused wholly by negligence and carelessness of the defendant and its officers, agents, and servants in not providing a suitable and safe place to work and in not applying suitable and safe tools, appliances, and equipment with which to do said work, and by negligently failing and neglecting to use pinch-bars in order to set its refrigerator car with its open pockets nearer in direct line with its trap platform, thereby avoiding the necessity of sliding ice cakes a considerable distance on the running-board to the open pockets at the end of the car."

The plaintiff contends that under the law of Wisconsin it is the duty of the employer to furnish his employees a reasonably safe place in which to work and to supply him with reasonably safe appliances. In *Sea Board Air Line Ry. v. Horton*, 233 U. S. 492, 34 Sup. Ct. 635, speaking of the instructions of the trial court in that case, the court said:

"In these instructions the trial judge evidently adopted the same measure of responsibility respecting the character and safe condition of the place of work, and the appliances for the doing of the work, that is prescribed by the local statute. But it is settled that since Congress, by the act of 1908, took possession of the field of the employer's liability to employees in interstate transportation by rail, all state laws upon the subject are superseded."    Page 501.

In *Sea Board Air Line Ry. v. Horton, supra,* it is stated that Congress, in enacting the federal Employers' Liability Act, intended to and did base the action upon negligence only, and excluded responsibility of the carrier to its employees for defects and insufficiencies not attributable to negligence.

It is the contention of the defendant that the insufficiency complained of was not the proximate cause of the injuries sustained by the deceased and for that reason the plaintiff cannot recover. This proposition is met by the plaintiff with

the claim that under the federal Employers' Liability Act, giving to a railway employee engaged in interstate commerce the right to recover for injury or death resulting in whole or in part from the negligence of the railway company, the common-law rule as to proximate cause has no relevancy, it being sufficient that the defect contributed in any manner to cause the injury, citing *Calhoun v. G. N. R. Co.* 162 Wis. 264, 156 N. W. 198, which was affirmed in *Sullivan v. M., St. P. & S. S. M. R. Co.* 167 Wis. 518, 167 N. W. 311. The statement in *Calhoun v. G. N. R. Co.* is supported by reference to *Alexander v. M., St. P. & S. S. M. R. Co.* 156 Wis. 477, 146 N. W. 510. It is there said:

"Under this statute [sec. 1810] if the want of a fence contributes in any manner to cause the injury the defendant is liable. The ordinary rules relative to proximate cause are not applicable," citing *Atkinson v. C. & N. W. R. Co.* 119 Wis. 176, 96 N. W. 529.

In *Atkinson v. C. & N. W. R. Co., supra,* a gate had been left open by third parties with the knowledge of the section foreman. He did not close the gate nor did he return the following day. The plaintiff's horse walked through the open gate upon the right of way and was killed. The court says:

"Neither does the statute limit the company's liability to cases where an ordinarily prudent person might have anticipated that animals would probably enter upon the right of way, but imposes absolute liability for any which do 'enter by reason either of failure to fence or of negligent failure to maintain fence, subject only to defense of contributory negligence in the latter case. The lawmakers have legislatively assumed the probability that animals will enter on a railroad which is fenced either inadequately or not at all, and dispensed with the necessity of a finding that an ordinarily prudent man would anticipate such event. The railway company is subjected to the duty of fencing not alone for the benefit of the adjoining owner, but of the public at large."

In the *Atkinson Case* it was held that that element of proximate cause which is denominated in this state "reasonable anticipation" has no application where an injury sustained is due in whole or in part to the failure of the party complained of to comply with the provisions of the penal statute. But this does not mean that in such cases there need be no causal connection between the violation of the statute and the injuries sustained. *Steinkrause v. Eckstein,* 170 Wis. 487, 175 N. W. 988, and cases cited.

The federal Employers' Liability Act does not give a new cause of action which did not exist at common law, but modified the common-law rule with respect to the defenses of contributory negligence, assumption of risk, and negligence of fellow-servant. *Garrett v. L. & N. R. Co.* 197 Fed. 715; *Burnett v. A. C. L. R. Co.* 163 N. C. 186, 79 S. E. 414.

Under the federal Safety Appliance Act it has been held that an employee, in order to recover where he has been injured while using equipment not complying with the terms of the statute, must show that the improper equipment or the absence of proper equipment was the proximate cause of his injury, and that the burden of proof is upon him to show that fact. *St. Louis, I. M. & S. R. Co. v. McWhirter,* 229 U. S. 265, 33 Sup. Ct. 858. See, also, *Voelker v. C., M. & St. P. R. Co.* 116 Fed. 867; *Erie R. Co. v. Russell,* 183 Fed. 722; *Briggs v. C. & N. W. R. Co.* 125 Fed. 745; Thornton, Federal Liability of Railroads (3d ed.) § 307; *Clark v. Erie R. Co.* 230 Fed. 478; *Virginian R. Co. v. Linkous,* 230 Fed. 88; *Spokane & I. E. R. Co. v. Campbell,* 241 U. S. 497, 509, 36 Sup. Ct. 683; *Spokane & I. E. R. Co. v. Campbell,* 217 Fed. 518; *Tremelling v. Southern Pac. Co.* 51 Utah, 189, 170 Pac. 80; *Baltimore & O. R. Co. v. Wilson,* 242 U. S. 295, 37 Sup. Ct. 123; *Bjornsen v. N. P. R. Co.* 84 Wash. 220, 146 Pac. 575.

In this case the cake of ice had slipped from the ice slide to the top of the car, where it had remained at rest. Thereafter the deceased proceeded to drag it diagonally along the

top of the car in the direction of the ice bunker and had proceeded between six and eight feet when the accident happened. The exact cause of the accident is not disclosed by the evidence. It is possible that the deceased stumbled, that his ice tongs slipped, or that the ice into which the tongs were hooked gave way; but whatever the cause, the slipping of the cake from the ice slide to the top of the car, a thing of not infrequent occurrence, did not operate to produce the injuries complained of. Therefore, the insufficiency of the slide, if it be assumed that there was such (and we do not so hold), did not contribute to the injuries of the deceased either in whole or in part. There was no causal connection between the two.

It can be argued that if the guide had been in the slide and the cake of ice had not fallen to the roof of the car the deceased might not have been injured and therefore a jury question is presented. Such an argument not only throws the whole question into the field of doubt and speculation, but ignores the established fact that at the time of the injury the negligence complained of had ceased to operate. The fall of the ice to the roof of the car had no consequences which contributed to the fall of the deceased. If the fall had thrown the deceased to the ground, or in endeavoring to prevent the fall of the ice or while trying to stop its fall the deceased had sustained injuries, there would have been a causal connection between the claimed negligence of the defendant and the injuries sustained. But where the cake of ice had come to rest and it had thereafter been moved to another place six or eight feet distant where the accident happened, how can it be said there is any connection between the negligence of the defendant and the injury sustained? Even if it be argued that the ice was on the wrong side of the running-board and that the deceased was trying to move it over the running-board, there is not the slightest evidence to show that the accident was due to that fact. The ice might have broken, the tongs might have slipped, or the

deceased might have stumbled just as well on one side as the other. The real cause of the unfortunate injury will never be known. Whatever it was, it was not the alleged defective condition of the slide. The mere fact that a movement of the cake of ice due to the alleged defect was one of a series of movements which preceded the accident does not establish a causal connection between the movement and the injury. In *Derr v. C., M. & St. P. R. Co.* 163 Wis. 234, 157 N. W. 753, if the plaintiff had not driven an unlicensed car he would not have been at the place of accident at the time he sustained the injuries complained of; yet it was held there was no causal relation. In *Benesch v. Pagel,* 171 Wis. 620, 177 N. W. 861, it was held that the fact that the plaintiff was driving in violation of law did not prevent recovery, there being no causal relation between the fact that the plaintiff was under sixteen and unaccompanied and the injury sustained. See *Haswell v. Reuter,* 171 Wis. 228, 177 N. W. 8.

There being no causal connection between the negligence complained of and the injury sustained, the defendant's motion for judgment dismissing the complaint should have been granted.

*By the Court.*—The order appealed from is reversed, and the cause remanded with directions to enter judgment dismissing the complaint upon the merits.

Owen, J. (*dissenting*). I think the motion for a new trial was properly granted. The charge of the court was subject to the criticism expressed by the trial judge, in my opinion. It seems reasonably clear to me that the plaintiff was entitled to have the question of the sufficiency of the appliance, referred to as the slide, submitted to the jury under proper instructions. The work of transporting the ice from the icehouse to the bunker was a simple operation unattended with any great hazard when everything went according to plan. The ice was let down from the platform

to the running-board on top of the car by means of the slide. When once on the running-board it was transported to the bunker. But in the instance here under consideration the ice slipped from the slide onto the slanting roof of the car. While if the deceased had permitted the ice to slide from the car to the ground the unfortunate accident would not have occurred, yet such conduct would not have commended him to the favorable consideration of his employer. The instinct of a faithful employee impelled him to rescue the cake of ice from its position and restore it to the running-board where it could be easily transported to its destination. While we do not know just how the accident occurred, the evidence in the case, in my judgment, justifies the inference that it resulted from a commendable effort on the part of the deceased to drag the cake of ice to the running-board of the car. If, in any view of the evidence, such an inference is permissible, the question was for the jury. *Porter v. Industrial Comm.* 173 Wis. 267, 181 N. W. 317.

While I concede that there must be a causal relation between the defective slide and the accident, it seems to me that relation is plain enough if the accident resulted from an effort to rescue the cake of ice from its malposition on the top of the car. I cannot see that the fact that it came to a state of rest in any way interrupts that relation. The effort to place the cake of ice on the running-board was made necessary by the fact that it was on the inclined portion of the roof of the car, a position which it had assumed by reason of the defective slide, if the slide was defective.

For these reasons, briefly stated, I think the order of the circuit court granting a new trial should be affirmed.