GROTJAN, Appellant, vs. RICE, Respondent.

*January 31—February 21, 1905.*

*Implied contract to pay for services: Minor: Emancipation: Evidence: Instructions to jury: Material and immaterial errors.*

1. In an action upon implied contract to recover for services of plaintiff while a minor living with defendant, the admission of evidence as to whether or not plaintiff was treated by defendant as a servant for hire was not error. The decision of the trial court as to the competency of such evidence is not to be disturbed unless manifestly wrong.
2. A question, asked on cross-examination of plaintiff's father, as to whether he had not stated that he was anxious to get the boy (who wished to study medicine) to the defendant's (who was a physician), because he would learn more than he would in school, is *held* immaterial, but, it having been answered in the negative, plaintiff was not prejudiced.
3. Evidence that plaintiff's father had advised him to make himself useful while at the defendant's place, as the latter did not like lazy persons, is *held* immaterial, and its admission with a suggestion that it had a bearing on the question whether plaintiff had been emancipated, was an error prejudicial to him.
4. Statements by plaintiff's father to third persons as to his relations with his son, not made in the presence of either of the parties, and not properly offered to impeach the father, were incompetent.
5. An instruction that by a "preponderance of the evidence" is meant "the evidence which satisfies and convinces your minds

and judgments," is *held* erroneous. That term should prop-
erly be defined, in effect, as outweighing in convincing force the
evidence on the other side.

6. An instruction that if plaintiff was the owner of his own time
during the period of the alleged services he was entitled to re-
cover if the jury found he had a cause of action, otherwise
not,—is *held* correct so far as it went; and the omission to ex-
plain what circumstances would give rise to a cause of action
was not fatal error, in the absence of any request for such ex-
planation.

7. An instruction that if plaintiff rendered the services under a con-
tract between his parents and the defendant, although he was
emancipated prior thereto, the making of such contract effected
a revocation of such emancipation and precluded him from re-
covering, if he had knowledge of such revocation, was errone-
ous.

8. Refusal to give requested instructions correctly stating the law
applicable to the case is error unless the substance thereof is
otherwise given to the jury. The presumption that every one
knows the law does not so apply as to justify such refusal.

9. Thus, in an action to recover for services on implied contract,
refusal of instructions applicable to the particular case and cor-
rectly stating under what circumstances defendant would be
liable on such a contract, was error where nothing equivalent
was given in the general charge.

10. Whether a minor has been emancipated or not may be shown by
an express agreement or by circumstantial evidence.

11. Evidence of casual statements or admissions of a party, made
in casual conversations to disinterested persons, is regarded
in law as the weakest kind of evidence.

APPEAL from a judgment of the circuit court for Wauke-
sha county: JAMES J. DICK, Circuit Judge. *Reversed.*

Action to recover on implied contract. The complaint is to
the effect that from the 17th day of July, 1899, to September
24, 1900, plaintiff rendered services to the defendant at the
latter's request as a servant on his farm, of the reasonable
value of $22 per month, or $308 in the whole, which became
due and payable September 24, 1900, and that no part thereof
has been paid, though payment thereof has been demanded.
Defendant answered putting all the allegations of the com-
plaint in issue, and pleading that about July, 1899, defendant

and plaintiff's father and mother made an agreement, the plaintiff being under the age of twenty-one years, to the effect that defendant should receive plaintiff as a member of his household, furnish him with board, lodging and washing, and afford him the advantages of defendant's professional library, he being a physician and surgeon, direct him in his reading and give him instruction preparatory to his entering a medical college and becoming a physician and surgeon, and plaintiff in consideration therefor while at defendant's home should make himself generally useful and perform such work and render such services for defendant as his time and convenience would permit; that the alleged services were performed under such agreement, and that all of the terms thereof were fully complied with by the defendant.

Upon the trial it was claimed on behalf of the plaintiff that he was emancipated by his parents before going to live with defendant, and before the arrangement with the latter was made. It was further claimed on the part of the plaintiff that he resided with and worked for defendant during the period mentioned in the complaint, under an agreement made between the latter and plaintiff's father that plaintiff should receive pay for his services. The jury found in favor of the defendant, and judgment was rendered accordingly. There was evidence tending to prove the respective contentions of the parties. Various rulings were made by the trial court to which exceptions were duly preserved for the purposes of appeal by the plaintiff.

*F. W. Houghton,* for the appellant.

For the respondent there was a brief by *Connell & Weidner,* and oral argument by *T. J. Connell.*

MARSHALL, J. A witness for the plaintiff, shown to know generally the course of affairs at respondent's home while appellant resided there, was permitted to state, on cross-examination, whether he ever heard the former request the latter

to do any work. It is said the evidence was prejudicially immaterial. It does not strike us that way. It was not claimed any express contract existed entitling appellant to compensation for his services. At the best for him it was claimed that out of the circumstances sprang an implied liability in that regard,—a presumption that he expected to receive compensation and respondent expected to render such, was relied upon. Such a presumption is always subject to explanation rebutting it. Any evidence tending that way was of course legitimate. Evidence as to how appellant was treated, respecting whether as a servant for hire or not, was supposed to be evidentiary along that line. Whether it was sufficiently such to be entitled to consideration by the jury was a question of competency. The decision of a trial judge on such a matter is not disturbable unless manifestly wrong. *Emery v. State*, 101 Wis. 627, 648, 78 N. W. 145. In the instance before us the indications are rather that the ruling was manifestly right instead of wrong.

Appellant's father testified in the former's behalf that respondent proposed to him to take appellant and make a doctor of him, and that after considering the matter with his wife he accepted the proposal with thanks for the opportunity offered the boy, saying to respondent that his son desired to be a doctor, and if he could get an education so as to gain admittance to a medical school and pay his tuition it would help him materially. To which respondent remarked that he knew how hard it was in his own case, working in the harvest fields for fifty cents a day to earn his tuition, and that it was much easier now than formerly for a young man to earn money; that it would take three to five weeks to arrange to take the boy. On cross-examination, apparently for the purpose of showing that the witness had made statements inconsistent with such evidence, this question was asked: "Did you not say to Mr. Hammie, 'I am anxious to get the boy to *Dr. Rice's* because it is a good place for him and he will learn

more than he would in school. 'I know the doctor will use him well'?" That was objected to as immaterial. The objection was overruled and the witness answered in the negative. The question seems to have been plainly immaterial, but we are unable to see that the answer could by any possibility have worked harm to appellant.

A witness was permitted to testify against objection by appellant's counsel that appellant's father advised him to make himself generally useful while at the doctor's place as the latter did not like lazy persons. It was allowed as bearing on whether appellant had been emancipated before going to the doctor's. The question was objected to as immaterial. It was perfectly consistent with control by the son of his own time for the father to advise him in respect to his conduct. Therefore the evidence was immaterial and misleading. Since it was admitted and the ruling in the matter was accompanied by a suggestion that it bore on whether the son was emancipated, it may have operated very prejudicially to appellant, because it was not legitimate as suggested by the court. What the father may have said to third persons as to his relations with his son, not in the presence of either of the parties to the litigation, and not properly offered to impeach the father, was incompetent.

Error is assigned because the court instructed the jury as follows: "And by a preponderance of evidence is not necessarily meant the side which has the most witnesses. It is the evidence which satisfies and convinces your minds and judgments." We agree with counsel for appellant that the learned court's definition is novel. The nearest approach thereto which we are aware of is in *Thomas v. Paul,* 87 Wis. 607, 613, 58 N. W. 1031, where the idea thus conveyed was unqualifiedly condemned as incorrect, though in that instance the instruction was held to be harmless, because it was given in close connection with one containing a correct definition worded with such clearness that it was thought the jury could

not have been misled by a statement that their belief as to the
truth of the matter in dispute was to be regarded as the evi-
dence to be relied upon, as regards the side having the pre-
ponderance of the evidence, instead of making the prepon-
derance of the evidence the cause of the belief. There was
no correct definition in this case. Whatever harmful effect
could reasonably follow from such an erroneous definition
may have occurred. What is meant by "preponderance of
the evidence," the manner in which the jury should proceed
in solving disputed propositions on evidence, and the degree
of certainty to which they should arrive before rendering a
verdict, are elementary. There is no need of any new phras-
ings in order to present the law in that regard to a jury. Ef-
forts to state elementary principles in ways not found in the
books are quite liable to work harm. The better way is not
to depart from those definitions which have received judicial
approval. The term "preponderance of the evidence" sug-
gests the quality of outweighing in convincing power. So it
means preponderance in the convincing power of the evidence.
In the orderly way of determining the truth from evidence,
the jury first consider the same and determine on which side
of the dispute there is the greater weight thereof, the more
convincing indications as to where the truth lies. They next
determine whether such greater indications are sufficiently
convincing to satisfy them of the truth of the matter, not be-
yond a reasonable doubt, for no such degree of certainty in
civil cases is required, nor merely as to what the preponder-
ance of the evidence tends to prove, for that degree of cer-
tainty leaves the truth of the matter possibly not more than
suggested,—the mind being far from satisfied as to the real
truth (*Gores v. Graff,* 77 Wis. 174, 46 N. W. 48),—but sat-
isfied of the truth to a reasonable certainty. That doctrine
has been frequently announced in this court. *Pelitier v. C.,
St. P., M. & O. R. Co.* 88 Wis. 521, 60 N. W. 250; *Curran
v. A. H. Stange Co.* 98 Wis. 609, 74 N. W. 377; *Ward v.*

*C., M. & St. P. R. Co.* 102 Wis. 215, 219, 78 N. W. 442. True, it is said in *Guinard v. Knapp-Stout & Co. Co.* 95 Wis. 482, 70 N. W. 671, "If the mind of the jury is convinced and satisfied, it is quite safe to assume that the preponderance of the evidence is on the side of such conviction." The learned justice of this court who used that language, *arguendo,* when presiding at the circuit used the language in *Thomas v. Paul, supra,* which this court was constrained to hold "was obviously incorrect." It was not intended here to suggest the use of the expression so made in *Guinard v. Knapp-Stout & Co. Co.* as a correct definition of "preponderance of evidence" or to sanction such use as permissible.

The jury should be told in terms or in effect: You should find according as you shall be satisfied of the truth of the matter in controversy by a preponderance of the evidence. If it is deemed best to give greater definiteness to the term "satisfied" it is best to say, and if requested to do so the court should say: Before finding in favor of the party on whom the burden of proof rests to establish any fact, you should be satisfied of the existence thereof to a reasonable certainty. If it is thought best to explain the meaning of the term "preponderance of the evidence," or if requested to do so, the court should define it in terms, or in effect, as outweighing in convincing force, not merely as "that evidence which convinces your minds and judgments," though by a deductive process of reasoning that may be true. The proper definition suggests a comparison of the convincing power of the evidence on one side with that upon the other, and a determination of which outweighs the other as to the probabilities. The defective definition might mislead a jury into making a conclusion without their following that logical course which is supposed to be best calculated to reach a right result with the greatest degree of certainty practicable.

The question of whether the plaintiff was the owner of his own time during the period of the alleged services was sub-

mitted to the jury, and in connection therewith they were told that if they resolved it in the affirmative he was entitled to recover, if they found he had a cause of action, otherwise not. Complaint is made of that because the evidence was undisputed that plaintiff was free to dispose of his own time during the period mentioned, and the last part of the instruction was inconsistent and indefinite. We cannot agree with the suggestion that the evidence was entirely undisputed on the first proposition, nor that there was any inconsistency or indefiniteness in the last one. It did not follow as a matter of course, by any means, from the evidence, that appellant was entitled, as a matter of law, to recover if he was emancipated before going to the doctor, and the condition thus created existed during the period of the alleged service. It was still left for the jury to determine whether the understanding between them or their conduct was such as to give rise to a cause of action in respondent's favor, though since no explanation was made to the jury as to what circumstances would give rise to such a cause of action they were left without any guide in the matter. However, so far as the instruction went it was right. No fatal error was committed in not going farther, except as proper requests in the matter were refused.

The jury were instructed in regard to partial as well as total emancipation. Error was assigned on that for the reason that there was no evidence respecting partial emancipation, and further for inconsistency and indefiniteness in the instruction. Without taking time or space to discuss the evidence, we will state as our conclusion that there were evidentiary circumstances along that line. No inconsistency or confusing element in the instructions is pointed out and we cannot discover any.

The jury were further instructed that if plaintiff performed the work for which a recovery was sought under a contract between his parents and the defendant, although he

was emancipated prior thereto, the making of such contract effected a revocation of such emancipation and precluded him from recovering, if plaintiff had knowledge of such revocation. That is complained of and rightly too. The evidence is undisputed that whatever agreement existed it was made between appellant's parents and respondent with his knowledge. The effect of the instruction, as the jury might well have understood it, was the direction of a verdict for respondent. Possibly the learned court meant to be understood as saying that if appellant's parents, in the attitude of controlling his time, made a contract for the disposition thereof to his knowledge and with his consent, it operated as a resumption of parental control, if such control had been previously surrendered. The jury might well have understood that if the parents assumed to make the agreement, whether they intended to act inconsistent with appellant being the disposer of his own time or not, and he knew of the act and shaped his course in harmony therewith, it operated to revoke the prior emancipation.

Other parts of the instructions given, which were excepted to, will not be discussed since appellant's counsel has not seen fit to point out any reason why they should be deemed prejudicial.

The court by several requests was asked to instruct the jury to the effect that if a person labors for another, with that other's knowledge and consent, no rate of compensation being fixed and no express contract being made or request to do the work being shown, the law presumes, in the absence of evidence to the contrary, that such person expected to receive and such other to pay compensation for the services upon the basis of the reasonable value thereof; that the law presumes that the services were rendered upon request, and that if such other knew at the time of such rendition that such person expected compensation as a matter of right, and nevertheless accepted the services, he is liable, as a matter of

law, for the reasonable value thereof.  All the instructions on that line were rejected, and nothing equivalent thereto or in any way touching the subject was given in the general charge. It is conceded, as we understand it, and as the fact is, that such instructions stated the law correctly and were applicable, but it is suggested that the jury must have so understood the law without assistance.  That is hardly a sufficient answer to appellant's complaint.  The requested instructions were, on every point to which we have referred, applicable to the issues raised by the pleadings and the evidence produced in respect thereto.  They should have been given, or the law to the same effect should in some proper manner have been stated in the general charge.  *Allen v. Perry,* 56 Wis. 178, 14 N. W. 3.

The learned court, in effect, stated that plaintiff was entitled to recover if he established by the evidence a cause of action, but gave the jury no guide as to what facts were necessary to that end.  Doubtless, the court supposed that from the statement of the claims made by the respective parties as given in the instructions, and from the general trend of the case, the jury would understand what facts would entitle appellant, as a matter of law, to recover.  The jury often may know the law without judicial assistance, but that does not excuse a refusal to give specific instructions, properly worded and seasonably requested, which are applicable to the case. Ordinarily every one is presumed to know the law, but that does not apply to a jury, else one of the most important duties devolving on the trial judge under our system would not exist.

Appellant's counsel further requested the court to instruct the jury that the status of a person in his minority, as to whether emancipated by his parents or not, may be shown by an express agreement or circumstantial evidence.  That was good law and was applicable to the case and should have been given.

The court was further requested to instruct the jury that "evidence of casual statements or admissions of a party, made

in casual conversations to disinterested persons, is regarded by law as very weak testimony, owing to the liability of the witness to misunderstand or forget what was really stated or intended by the party. It is considered to be the weakest kind of evidence." That was applicable to the evidence which the jury had to deal with. There was considerable evidence of the nature suggested in the request. Such request was good law according to the repeated decisions of this court, and therefore it should have been given to the jury. *Haven v. Markstrum,* 67 Wis. 493, 30 N. W. 720; *Emery v. State,* 101 Wis. 627, 78 N. W. 145.

There were some other requests made and refused, but the substance thereof has either been covered by what has already been said, or they were inapplicable to the evidence, or included in the general charge.

*By the Court.*—The judgment is reversed, and the cause remanded for a new trial.