WILL, Respondent, vs. CHICAGO, MILWAUKEE & ST. PAUL
RAILWAY COMPANY, Appellant.

*October 11—November 9, 1926.*

*Trial: Five-sixths jury law: Concurrence of same ten jurors in
answers sustaining cause of action or defense: Sufficiency.*

Where ten jurors were agreed that the defendant railroad com-
pany did not have knowledge that there was danger to its em-
ployees from a condition existing in its refrigerator cars, and
that it ought not, in the exercise of ordinary care, to have
known of such danger, and these two answers cover the en-
tire range of possible liability of the defendant, judgment
should be entered for the defendant notwithstanding the same
ten jurors did not agree upon other questions of the special
verdict. [Language in prior cases, particularly *Hobbs v.
Nelson*, 188 Wis. 108, that "it is necessary for the same ten
jurors to agree upon their answers to each and every question
in a special verdict," withdrawn.]

APPEAL from an order of the circuit court for Milwaukee
county: OTTO H. BREIDENBACH, Circuit Judge. *Reversed.*

Plaintiff, while in defendant's employ, was on February
18, 1924, burned on the back of his neck from contact with
a heater stove in a refrigerator car, one of a train in inter-
state commerce and waiting in defendant's yards at Mil-
waukee. This, like others in the same service, was a closed
car with a bunker or space at each end about eight feet long
and two feet wide for the storage of ice or the maintaining
of a heater according to the season. The heater in question,
in which charcoal was burned, was cylindrical in form,
about thirty-two inches high, fifteen inches in diameter,
fastened in the bunker slightly above the bottom of the car,
and with a space of about three feet from its top to the inner
of two traps or hatchways on the top of the bunker. Open
spaces in the inside wall of the bunker permitted the passage
of the colder or warmer air into the storage part of the car
and also permitted ventilation.

Upon the arrival of such train in transit through Milwaukee it was plaintiff's duty, with several other employees, to examine a car-heater's slip attached to the way-bill of every car moving under heater protection. This slip gave the serial number of the heater, its place of location, and whether burning oil or charcoal. He was required to keep a personal record book of all such cars inspected by him, with appropriate dates and time of performing the service, the heater number, whether burning or not, and, if cleaned and filled, that fact to be recorded as well as the outside temperature. Upon each such car was attached a card about nine by eight inches showing that it was a heated car containing one or more heaters and the kind of fuel used and where the heater was located, with the word "warning" in red letters an inch high and with the following, also in red letters: "When cars are equipped with heaters using either charcoal or briquette, *all persons are warned* against remaining in such cars *with the doors closed while heaters are burning.*" On the top of each heater were two metal plates, one containing the serial number of the heater, etc., the other the words "Danger—Gas. Keep this cover on tight. Do not remain in closed car."

During plaintiff's prior service he had inspected in such cars 118 charcoal and seven oil heaters, fires in sixty-five of which were burning at the time of inspection.

In accordance with his conceded custom he climbed on top of this car about 8:30 p. m., and upon lowering the lantern into the bunker the light went out. This notified him of the presence of gas and of danger in then entering and the necessity of leaving the top of the bunker open for at least five to eight minutes. He left the car and went to obtain charcoal necessary to replenish the fire and returned after an interval of fifteen to twenty minutes, again lowered the lantern, and as that continued to burn he dropped the charcoal into the bunker, followed it, read the serial number on

the top of the heater, checked it in his record book, placed the book and pencil in his pocket, opened the top of the heater, poured in the charcoal and replaced the cover, and claims that he then became unconscious. He was discovered by another employee at about 10 o'clock with his arms and part of his body outside of the top of the bunker.

There was dispute in the testimony as to what extent if any plaintiff had received other warnings than those above recited as to danger from fumes or gases from burning charcoal. Plaintiff's expert evidence was to the effect that under the situation disclosed from plaintiff's testimony he had been overcome by either carbon monoxide or carbon dioxide gas from the burning charcoal, each of these being colorless and with slight if any odor, the monoxide slightly lighter, the dioxide slightly heavier than air.

Defendant's supervisor of this inspection service knew that carbon monoxide gas was deadly and that a man could be overcome by it, and that at least five or six minutes should be allowed after the opening of the bunker tops, such gas being present, before an inspection could be safely made. Defendant's uncontradicted evidence was to the effect that through about five or six years of such service and involving about 175,000 to 200,000 similar inspections each year, but one case had been reported of an employee, in making such inspection, being overcome by gas, the details as to such accident[1] being not permitted in evidence on plaintiff's objection.

The special verdict as answered by the jury was as follows:

(1) When plaintiff was leaving the car was he overcome by gas? A. Yes. (Jurors H. and K. dissenting.)

(2) Did defendant know of the danger to employees from the gases emitted by heaters in refrigerator cars when the hatchways were open a few minutes? A. No. (Juror Menz dissenting.)

(3) Ought the defendant, in the exercise of ordinary

care, to have known of the danger to employees from gases emitted by heaters in refrigerator cars when the hatchways were open a few minutes? *A.* No.

Questions (4), (5), and (6) were only required to be answered providing the preceding questions were answered Yes, and were therefore left unanswered.

(7) Did plaintiff know of the danger from gases emitted by heaters in refrigerator cars when the hatchways were open a few minutes? *A.* No.

(8) Was not to be answered unless (7) was answered Yes.

(9) Did any negligence on the part of the plaintiff proximately contribute to produce his injury? *A.* Yes. (Jurors S. and *Menz* dissenting.)

(10) Found that fifty per cent. of the entire negligence was attributable to plaintiff.

(11) Assessed damages at $10,000.

Plaintiff moved for a retrial on the ground that the jury had failed to agree upon a verdict and no verdict in law had been rendered. The defendant moved for judgment notwithstanding the verdict; that if such be denied that the dissent in question (2) be stricken, and then for judgment upon such corrected verdict.

Defendant's motions were severally denied,—the trial court by written decision stating that question (2) presented an issue for a jury determination, and, the jury having failed to agree upon a verdict, ordered a new trial.

From such order defendant appeals.

For the appellant there were briefs by *H. J. Killilea* and *Rodger M. Trump,* both of Milwaukee, and oral argument by *Mr. Trump.*

For the respondent there was a brief by *Padway, Skolnik & Morgan,* attorneys, and *Henry Mahoney,* of counsel, all of Milwaukee, and oral argument by *Mr. I. B. Padway* and *Mr. Mahoney.*

ESCHWEILER, J. It is conceded that plaintiff's employment at the time of the injury was connected with interstate

commerce and that therefore the respective rights and liabilities of the parties are under the federal statutes and not those of this state.

It is conceded in this case that there was danger for any one to enter the confined space of one of these bunkers, a charcoal fire burning and gas being present, until after some six to eight minutes had been allowed for such gas to pass off by the opening of the top of the bunker; that the going out of a lowered light in such bunker was a danger signal and notice of the need for such ventilation; that defendant knew of such danger continuing until such ventilation had been had; that warning to that effect had been conveyed to plaintiff; that plaintiff knew of such danger from instructions, his prior experience, and his lowering the light in this particular instance on first opening the bunker and on his return after the fifteen or twenty minutes interval indicated this.

For convenience we shall refer to the known or first danger present upon the immediate opening of such bunker in which charcoal was being consumed as the *primary* danger, and the one upon which plaintiff must rely in order to assert and maintain a liability against defendant, and the one asserted to have been present after there had been the fifteen to twenty minutes of ventilation and after a lowered light continued to burn, as the *secondary* danger.

A liability against the defendant could only be sustained in this case on the theory that defendant either had *actual* knowledge or failed to acquire, in the exercise of due care, actual knowledge of such "secondary" danger, if there be one, of entering such a bunker *after* the expiration of the usual time allowed for proper ventilation or after a test of lowering a light and its continuing to burn, and further in failing to properly instruct the plaintiff of such continuing or newly arising danger, or secondary danger.

The special verdict was framed to require the jury to

answer only as to this *secondary* as distinguished from the so-called *primary* danger.

The twelve jurors were unanimous in their answer to the third question to the effect that the defendant could not be charged with failing to exercise ordinary care in learning of this secondary danger (necessarily assuming absence of *actual* knowledge). Somewhat strangely, however, one of such jurors, Menz, dissented from what would otherwise have been the unanimous conclusion of the same twelve jurors in the consideration of the second question, which determined that the defendant did not have *actual* knowledge of any such secondary danger.

These two questions covered the entire subject of any possible breach of defendant's duty towards plaintiff. A proper jury finding in defendant's favor on these two questions would not only have interposed an obstacle to the entering of a judgment for plaintiff but would have required a judgment for defendant,—for when court or jury find that defendant has breached no duty towards plaintiff that terminates, and in defendant's favor, such tort action.

Because of the dissent the juror Menz expressed to the second question and because two other jurors expressed their dissent to the jury's conclusion on the first question of the special verdict, namely, relating to the time when plaintiff was overcome by the gas, and still another juror together with juror Menz dissented on question (9) as to plaintiff's contributory negligence, the trial court felt bound to reject the verdict as a whole and therefore ordered a retrial.

Unfortunately there is support for such view by the trial court from language in several of our former decisions passing upon the effect to be given to sec. 270.25 (sec. 2857), Stats., providing that a verdict, finding, or answer agreed to by five sixths of the jury shall be the verdict, as the stat-

ute was made to read to conform with the amendment in 1922 of sec. 5, art. I, Const. These constitutional and statutory amendments were discussed with reference to their effect upon charges to a jury as to the burden of proof and affirmative and negative answers in *Papke v. Haerle*, 189 Wis. 156, 162, 207 N. W. 261, and *Stokdyk v. Schmidt*, 190 Wis. 108, 208 N. W. 941; but what was there said is not material in connection with the present question.

The decisions necessary now to consider are the following:

In *Dick v. Heisler*, 184 Wis. 77, 198 N. W. 734, it was said (p. 86):

"As we construe the statute, ten members of the jury must agree before a question can be answered; but the same ten must agree to each question before it can be answered." . . . "Of course, a verdict may be arrived at if the same ten or eleven jurors agree in their answers to all of the questions."

In *Kosak v. Boyce*, 185 Wis. 513, 201 N. W. 757, where it was impossible to tell in the special verdict there presented, which of the jurors were dissenting in the several answers in which they were not unanimous, *Dick v. Heisler, supra,* was quoted (p. 524) in its holding that it was necessary for the same ten jurors to agree upon answers to every question of the special verdict.

In *Stevens v. Montfort State Bank*, 183 Wis. 621, 198 N. W. 600, it was stated (p. 625), referring again to *Dick v. Heisler, supra,* that it was error to instruct the jury that if any ten of their number agreed as to any question they might answer it and return a verdict.

In *Bentson v. Brown*, 186 Wis. 629, 203 N. W. 380, an instruction similar to that criticised in *Kosak v. Boyce, supra,* was again held error (p. 637), though in that case not prejudicial error.

In *Hobbs v. Nelson,* 188 Wis. 108, 205 N. W. 918, the above cases are referred to, and it is said that "it is necessary for the same ten jurors to agree upon their answers to each and every question of a special verdict" (p. 115), and that under this amendment, instead of the old unit of twelve, the new unit of ten must be of the same ten individual jurors (p. 115).

The situation in the present case now shows us that the language used in those former cases, and particularly that used in *Hobbs v. Nelson, supra,* and for which language there the writer here should be charged, was unfortunate, to say the least, and has undoubtedly led the trial courts in other instances than the one now before us into the mistake which we must now undertake to correct.

When in cases of this kind a special verdict is submitted to the jury it generally contains one set, or one or more sets, of questions which may determine, independently of all the others, the essential elements of such a case. That is, lawsuits generally present matters or issues which belong to what, for want of a better term, may be described as plaintiff's attack, failing in sufficient proof of which his lawsuit fails; there may also be that which constitutes defendant's defense, immaterial, of course, unless plaintiff succeeds in his attack. (Disregarding here the matter of counterclaims where the defendant, in effect, is plaintiff.)

If now, ten jurors, as in former days twelve jurors, are agreed upon the essential questions asserted as to a cause of action or to sustain a defense, though each such ten may not be the same as are in accord on other questions of the special verdict, their accord on such essential questions is sufficient to make the verdict proper to be now received under the present law. In other words, if ten jurors are agreed that a defendant was negligent as to some particular duty and also that such negligence was a proximate cause of

the injury and as to the amount of plaintiff's damages, that is sufficient to make a good verdict or finding against the defendant in that regard, although such ten jurors may not be the same ten that are in accord on other questions; if, however, one set of ten should agree that the defendant did fail in the exercise of the degree of care required of him, but a different set of ten agree that such found negligence was a proximate cause of the injury, the combination of such two answers would not be a sufficient verdict upon which the ultimate responsibility of the defendant could be based. But when ten jurors are agreed, as it appears in this case, that the defendant did not have actual knowledge of a suggested danger and also are agreed that such defendant ought not, in the exercise of the care required, to have known of such danger, and such two questions cover the entire subject of the possible liability of defendant, the return of such verdict requires a judgment for defendant because it is a complete verdict, in that it finds a want of the essential element for the plaintiff to maintain in such class of cases, namely, negligence or a breach of duty.

The same situation undoubtedly would arise with reference to the question of contributory negligence. One set of ten jurors might find defendant negligent and that such negligence was the proximate cause of the injury; another set of ten might, however, find that there was negligence by plaintiff proximately contributing to the same injury. That defendant was thus found negligent and proximately contributing to the injury would then become immaterial, so far as plaintiff's ultimate right to recover was concerned, because ten jurors having found that plaintiff himself was negligent, then it follows, as a matter of law, that the plaintiff cannot recover.

Under this view, and regretting the former language of this court, above recited, which must now be deemed with-

drawn, it becomes our duty to hold that, upon the verdict as here rendered, the motion of the defendant for judgment upon such verdict should have been granted.

Other questions presented need not be considered.

*By the Court.*—Order reversed, and cause remanded for judgment for defendant.