Todd NOMMENSEN, Plaintiff-Appellant,†

v.

AMERICAN CONTINENTAL INSURANCE COMPANY and Saint Mary's Medical Center, Inc., a Wisconsin corporation, Defendants-Respondents.

Court of Appeals

*No. 99–3018. Submitted on briefs August 15, 2000.—Decided September 27, 2000.*

## 2000 WI App 230

(Also reported in 619 N.W.2d 137.)

†Petition to review granted.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *John Barry Stuff* of *Stewart, Peyton, Crawford, Crawford & Stuff* of Racine.

On behalf of the defendant-respondent, the cause was submitted on the brief of *John A. Nelson* and *Timothy W. Feeley* of *von Briesen, Purtell & Roper, S.C.* of Milwaukee.

Before Brown, P.J., Nettesheim and Snyder, JJ.

¶ 1. NETTESHEIM, J.   This is a medical malpractice case commenced by Todd Nommensen against Saint Mary's Medical Center, Inc. and its insurer, American Continental Insurance Company (St. Mary's). A jury determined that St. Mary's was negligent but that such negligence was not causal.

Nommensen appeals from the ensuing judgment dismissing his complaint. He argues that the trial court improperly admitted certain testimony and erroneously instructed the jury regarding the burden of proof. He also contends the verdict violated the five-sixths rule. We uphold all of the trial court's rulings and affirm the judgment.

### *Facts and Trial Court Proceedings*

¶ 2. While Nommensen was hospitalized at St. Mary's following chest surgery, nurse Kim Dvorak Shepherd administered an injection of Toradol, a pain medication, into Nommensen's right thigh. Nommensen testified that he immediately felt a pain. He contended that the injection was made in the front of his thigh, a location different from all previous injections. Following the injection, Nommensen refused all further injections. St. Mary's records and Shepherd's notes did not document the location of the injection nor any complaint from Nommensen at the time the drug was administered. However, three days later, Shepherd's supervisor left a note for Nommensen's doctor saying that Nommensen had complained of numbness and a burning sensation in his right thigh. After his release from the hospital, Nommensen continued to experience pain and numbness in his thigh. Eventually, he was diagnosed with nerve damage.

¶ 3. According to the expert testimony, the proper locations for an injection are the shoulder, the buttocks, the side of the buttocks and the side of the mid-third of the thigh. Shepherd testified that she properly administered the injection under these standards.

¶ 4. Nurse Ellen Buggy testified on behalf of St. Mary's about certain properties of Toradol and its

propensities for causing discomfort or harm even when properly injected. Nommensen objected to this testimony, arguing that it represented a superseding cause for his injury which St. Mary's had not pled as an affirmative defense. The trial court disagreed and permitted Buggy's testimony.

¶ 5.  When instructing the jury on the burden of proof, the trial court used standard instruction WIS JI—CIVIL 200, which states, "This burden is to satisfy you to a reasonable *certainty* by the greater weight of the credible evidence that 'yes' should be the answer." (Emphasis added.) In so instructing, the court rejected Nommensen's request that the word "probability" should be substituted for the word "certainty."

¶ 6.  The jury determined that St. Mary's was negligent, with two jurors dissenting. However, the jury further determined that such negligence was not causal, with two different jurors dissenting.[1] By a motion after verdict, Nommensen sought a mistrial ruling and a new trial, claiming that the verdict did not satisfy the five-sixths rule set out in WIS. STAT. § 805.09(2) (1997–98).[2] The trial court ruled that the verdict satisfied the five-sixths rule.

¶ 7.  Based upon the jury verdict, the trial court entered a judgment dismissing Nommensen's complaint. Nommensen appeals, challenging the three rulings we have discussed.

---

[1] The jury fixed Nommensen's damages at $95,000. One of the jurors who dissented on the first question regarding St. Mary's negligence also dissented on this damage question.

[2] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

## Discussion

### 1. Nurse Buggy's Testimony

¶ 8. Nommensen contends that Buggy's testimony about the properties of Toradol and its potential effect upon a patient even when properly administered was akin to a claim that Toradol was a defective product. He argues that this was a "superseding cause" theory of defense which St. Mary's was required to plead as an affirmative defense pursuant to WIS. STAT. § 802.02(3). Nommensen concludes, "As a result, [St. Mary's] shifted blame to a silent defendant with a silent chair in the courtroom who was added into the case after the statute of limitation ran."

¶ 9. We reject Nommensen's argument. We begin by noting that St. Mary's did not dispute that Nommensen had suffered an injury. Rather, its theory of defense was that Shepherd had properly administered the injection and had not caused Nommensen's injury. To that end, St. Mary's answer denied that it had caused the injury. Buggy's testimony was consistent with that defense, explaining that Toradol could cause such an injury even when properly administered. However, in making this defense, St. Mary's did not contend, akin to products liability law, that Toradol was defective, unsafe, unreasonably dangerous or otherwise unfit for the purpose intended. *See* WIS JI—CIVIL 3200. In short, this theory of defense was not an invocation of the law of superseding cause.

¶ 10. Furthermore, the attorneys' opening and closing statements to the jury confirm that St. Mary's did not deviate from its theory of defense as drawn by the pleadings. In fact, Nommensen himself anticipated that St. Mary's would offer the kind of defense represented by Buggy's testimony. In his opening statement,

Nommensen's counsel stated, "[W]e know that the hospital will respond that . . . [Shepherd] gave the shot in the right place, but it was an untoward result; it was a bad result." Agreeing, St. Mary's counsel told the jury in his opening statement:

> This is a case of an unfortunate but recognized complication of an appropriately given injection in Mr. Nommensen's thigh. Now you will hear that there is no dispute that Mr. Nommensen has what's called paresthesias or an area of sensory loss in his right thigh. What is in dispute is how that nerve came to be impaired. We expect to show you that such a complication can and does occur despite appropriate care being given by the nurses involved.

¶ 11.    Echoing these very words, the first statement by St. Mary's counsel in his final argument to the jury was, "This is a case of an unfortunate but recognized complication of an intramuscular injection which was appropriately given." Moreover, counsel's only reference to Buggy's testimony in his final argument did not even deal with the testimony that Nommensen challenges on appeal. Rather, counsel cited to Buggy's unrelated testimony about the standard of care relative to the administration of injections. ■■

¶ 12.    In summary, the issue in this case was where Shepherd had made the Toradol injection in Nommensen's thigh. One of the questions posed by that issue was how Nommensen could have sustained his injury in the face of St. Mary's claim that the injection had been properly administered. St. Mary's answer was that Toradol itself carries properties which can occasion an injury, even if properly administered—a defense that Nommensen himself anticipated in his

opening statement to the jury. And this was a defense consistent with St. Mary's denial of causation. Thus, Buggy's testimony did not move beyond the issues as drawn by the pleadings and as further framed by the pretrial proceedings. We hold that the trial court properly allowed Buggy's testimony.

## 2. Burden of Proof Instruction

¶ 13.   The trial court instructed the jury pursuant to WIS JI—CIVIL 200 which states, in relevant part, "This burden is to satisfy you to a reasonable certainty by the greater weight of the credible evidence that 'yes' should be the answer." Nommensen objected to this instruction, contending that the court should substitute the word "probability" for "certainty." In support, Nommensen looks to an article published in VERDICT, a publication of the Wisconsin Academy of Trial Lawyers, which cites a study concluding that "certainty" produces a higher expectation in a juror's mind than "probability." *See* Alan E. Gesler, *The Burden of Proof: How Certain is Reasonable,* 14 VERDICT 12 (Winter 1991).

¶ 14.   Nommensen also cites to dated Wisconsin case law which has questioned the "certainty" standard. *See, e.g., Pelitier v. Chicago, St. P., M. & O. Ry. Co.,* 88 Wis. 521, 60 N.W. 250 (1894). However, none of these cases have condemned the use of the term or deemed it error. Finally, Nommensen concedes that WIS JI—CIVIL 200 correctly sets out current Wisconsin law on the subject. In *Victorson v. Milwaukee & Suburban Transport Corp.,* 70 Wis. 2d 336, 234 N.W.2d 332 (1975), the trial court had instructed the jury under the "probability" standard. *See id.* at 356. Holding that the instruction was error, albeit harmless, the court noted that the "certainty" standard is the proper level for

satisfying the preponderance of the evidence test. *See id.* at 357. And the court cautioned that the use of the word "probability" was "not to be encouraged." *Id.*

¶ 15. Whether the "certainty" standard is a correct statement of the burden of proof is oftentimes produced by those cases where expert testimony is couched in terms of "reasonable probability." *See, e.g., Brantner v. Jenson,* 121 Wis. 2d 658, 663–68, 360 N.W.2d 529 (1985). The Wisconsin Civil Jury Instructions Committee has recognized the potential tension between the two concepts in its Comment to WIS JI—CIVIL 200:

> Suggestions have also been made to the Committee and to trial judges during instruction conferences that the certainty element ("to a reasonable certainty") should be replaced with the term "reasonable probability." Apparently, this suggestion is prompted by the fact that most expert witnesses, at least in medical malpractice cases, are asked to give opinions "to a reasonable probability."

Nonetheless, the Committee has concluded "that the term 'reasonable certainty' has been firmly established in our case law and accurately reflects the degree of certitude jurors must reach in answering verdict questions." *Id.*

¶ 16. The court of appeals is principally an error-correcting court. *See Jackson v. Benson,* 213 Wis. 2d 1, 18, 570 N.W.2d 407 (Ct. App. 1997), *rev'd on other grounds,* 218 Wis. 2d 835, 578 N.W.2d 602 (1998), *cert. denied,* 525 U.S. 997 (1998). We are bound by the precedents established by our supreme court. *See State v. Lossman,* 118 Wis. 2d 526, 533, 348 N.W.2d 159 (1984). Given the standing law as announced by the supreme court, we conclude that the trial court did not err in its

use of WIS JI—CIVIL 200 when instructing the jury as to the burden of proof.

### 3. Five-Sixths Rule

¶ 17.   Nommensen contends that because the two jurors who dissented from the negligence finding against St. Mary's were not the same two jurors who dissented from the finding of no causation, the verdict did not satisfy the five-sixths rule set out in WIS. STAT. § 805.09(2). The statute states:

> VERDICT. A verdict agreed to by five-sixths of the jurors shall be the verdict of the jury. If more than one question must be answered to arrive at a verdict on the same claim, the same five-sixths of the jurors must agree on all the questions.

¶ 18.   The supreme court set out the black letter principles of the five-sixths rule in *Giese v. Montgomery Ward, Inc.*, 111 Wis. 2d 392, 331 N.W.2d 585 (1983). The five-sixths rule does not require that the same ten jurors must agree on every question. *See id.* at 401. Rather, the rule requires that the same ten jurors must agree on all questions *necessary to support a judgment on a particular claim. See id.* Thus, when we conduct a five-sixths analysis, we review the verdict on a claim-by-claim basis rather than as a whole. *See id.* Finally, dissents which are important to one claim may be immaterial to another. *See id.*

¶ 19.   Nommensen's argument fails because he seeks to use the whole verdict as the premise for his five-sixths challenge when, in fact, the jury's finding of no causation, standing alone, resolves the issue. Here, one of St. Mary's defenses was that even if it was negli-

gent, such negligence did not cause Nommensen's injury. As noted, ten of the twelve jurors agreed with this assertion. This answer fully resolved St. Mary's claim of no causation in its favor and fully extinguished Nommensen's right to recover. Under *Giese*, the jury's other answer finding that St. Mary's was negligent was not "necessary to support a judgment" on St. Mary's claim that any negligence on its part did not cause Nommensen's injury.

¶ 20. The case law also establishes that these same principles apply whether we assess a verdict in favor of the plaintiff or the defendant. In *Augustin v. Milwaukee Electric Railway & Transport Co.*, 259 Wis. 625, 49 N.W.2d 730 (1951), the jury determined that the defendant was not negligent, with two jurors dissenting. *See id.* at 629. The jury also determined that the plaintiff was not contributorily negligent with respect to three of four theories of liability presented, with two different jurors dissenting on one of the theories. *See id.* at 629–30. The supreme court held that the jury's finding of no negligence by the defendant, agreed to by ten of the jurors, entitled the defendant to a judgment of dismissal. *See id.* at 632–33.

¶ 21. To the same effect is *Will v. Chicago, Milwaukee & St. Paul Railway Co.*, 191 Wis. 247, 210 N.W. 717 (1926), where the jury, with one dissenter, determined that the defendant was not negligent but also determined, with two dissenters, that the plaintiff was contributorily negligent. *See id.* at 249–50. The supreme court reversed a grant of a new trial on grounds that the jury had not agreed upon the verdict. *See id.* The court held that the answer as to the absence of negligence on the part of the defendant "requires a judgment for defendant because it is a complete verdict, in that it finds a want of the essential element for

the plaintiff to maintain . . . namely, negligence or a breach of duty." *Id.* at 255.

¶ 22.   Even apart from this case law, Nommensen's contention that we must look to the entire verdict does not bear up. If the jury in this case had unanimously agreed that St. Mary's was negligent, but ten jurors still found that such negligence was not causal, Nommensen could not argue that the verdict was defective because the same ten jurors would have agreed on all the questions. Yet here, where Nommensen has failed to persuade two of the jurors on the negligence question, he argues that the verdict is subject to a five-sixths challenge. Thus, Nommensen seeks to use his failure to persuade the two jurors on the negligence question as a sword against the verdict when he would not be permitted to do so if he had prevailed with all the jurors on the negligence question.

¶ 23.   We uphold the trial court's ruling that the verdict satisfied the five-sixths rule.

### Conclusion

¶ 24.   We hold that the trial court properly admitted the testimony of Buggy and correctly instructed the jury as to the burden of proof under WIS JI—CIVIL 200. We also hold that the verdict satisfied the five-sixths rule.

*By the Court.*—Judgment affirmed.

¶ 25.   BROWN, P.J. *(concurring)*.

I agree with the lead opinion in this case, and as it particularly relates to this concurrence, Part 2. I write separately because I am convinced that it is time for the supreme court to reevaluate the use of the phrase

"reasonable certainty" as it exists in our standard instruction to the jury relating to the burden of proof for ordinary negligence, WIS JI—CIVIL 200. Wisconsin law requires that the plaintiff prove negligence by a preponderance of the evidence. *See Mock v. Czemierys*, 113 Wis. 2d 207, 211, 336 N.W.2d 188 (Ct. App. 1983). I am satisfied that using the term "reasonable certainty" in the instruction creates too high of a risk that jurors will hold a plaintiff to a higher burden of proof than intended.

¶ 26. WISCONSIN JI—CIVIL 200 states, in relevant part, as follows:

> The burden of proof, other than on question —— (*e.g.*, comparison of negligence) and the damage questions in the verdict, rests upon the party contending that the answer to a question should be "yes." This burden is *to satisfy you to a reasonable certainty* by the greater weight of the credible evidence that "yes" should be the answer.
>
> *By the greater weight of the evidence is meant evidence which when weighed against evidence opposed to it has more convincing power.* Credible evidence is evidence which . . . is worthy of your belief. (Emphasis added.)

¶ 27. The term "reasonable certainty" is not defined for jurors. Jurors must therefore draw their own conclusions about what the term means. However, while jurors are left to their own devices to ascertain the meaning of the term, we may assume, for purposes of Wisconsin law, that jurors will draw the same meaning of a word or term which is defined in a recognized dictionary. *Cf. Erdman v. Jovoco, Inc.*, 173 Wis. 2d 273, 279, 496 N.W.2d 183 (Ct. App. 1992) (stating that reasonable persons might look to a dictionary to define words). THE RANDOM HOUSE DICTIONARY OF THE ENGLISH

LANGUAGE, UNABRIDGED, defines the word "certainty" as: "1. the state of being certain. 2. something certain; an assured fact. 3. **for** or **of a certainty**, certainly; without a doubt: *I suspect it, but I don't know it for a certainty.*" THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE, UNABRIDGED 339 (2d ed. 1987).

¶ 28.  But we do not have to rely on assumptions and conjecture to come to the conclusion that ordinary persons think of "certainty" as being "free of doubt." We have empirical testing supporting it. A linguistic study was published in the New England Journal of Medicine indicating that the use of the word "certainty" produces in the hearer an expectation of probability of 94% or more. *See* Augustine Kong, et al., *How Medical Professionals Evaluate Expressions of Probability*, NEW ENG. J. MED. 740, 743 (1986). The study set out to quantify certain qualitative expressions. *See id.* at 740. Thus, while the study was of qualitative expressions, the experiment was quantitative. *See id.* The subjects were those who were either physicians or persons studying medical subjects and who were using interactive computer programs. *See id.* at 741. The subjects were asked to focus on twelve probability expressions: "certain," "almost certain," "very likely," "probable," "likely," "frequent," "not reasonable," "possible," "unlikely," "improbable," "almost never" and "never." *See id.* The subject's belief in the probability of a fact being true moved along a scale of 0% to 100% depending on the terms used. *See id.* Sampling error was taken into account and statistically enumerated and accounted for. *See id.* at 742.

¶ 29.  The outcome, in pertinent part, was as follows: The word "certain" had a probability rating of 99%. *See id.* at 743. When the adverb "almost" was added to the adjective "certain," the median moved

from 99% to 94%. *See id.* The data thus points to the unescapable conclusion that words matter and a person being asked to find something to a "certainty" thinks of the task as being asked to find something to a 99% degree of probability or higher. This empirical study was published in one of the most recognized avenues for peer review in the United States. There is a strong tradition of editorial overview. Hence, the study's empirical reliability is enhanced.

¶ 30.  While it is true that the study did not measure the term "reasonable certainty," I am satisfied that it makes no difference. I do not believe that placing the adverb "reasonable" before the adjective "certainty" allows the hearer to qualify or downgrade the near absolute quality of the word "certain." The word "reasonable" is defined by THE RANDOM HOUSE DICTIONARY as "agreeable to reason or sound judgment; logical." *See* THE RANDOM HOUSE DICTIONARY at 1608. That jurors are asked to determine that a fact is "logically certain" is not the same as being asked to downgrade the probability of a fact being true. Rather, the jurors are simply being reminded that the decision about certainty must be one that is rationally made. I am convinced that the term "certainty" and the term "reasonable certainty" ask the jurors the same question.

¶ 31.  Those who defend the use of "reasonable certainty" in the standard instruction most likely have no disagreement with this empirical data. They would probably agree that "reasonable certainty" means a probability of at least 94% or more. But they would also likely contend that it does no injustice to a plaintiff's burden to prove the case to a preponderance of the evidence. These defenders would probably argue that jurors are not told to hold the plaintiff to a burden of

convincing them with evidence that is 94% certain or more. Rather, the jurors are only being asked to be at least 94% certain about which side's "story" has the greater weight.

¶ 32. The defenders would no doubt point out that there is a difference between preponderance of evidence and burden of proof. They would probably then cite *Eichman v. Buchheit*, 128 Wis. 385, 388 (1906), for the following proposition:

> Preponderance of evidence and burden of proof are not the same thing, although they run into each other. By preponderance of evidence is meant the evidence which possesses greater weight or convincing power; by burden of proof is meant the duty resting on the party having the affirmative of the issue to satisfy or convince the minds of the jury, by the preponderance of the evidence, of the truth of his contention.

¶ 33. The defenders would most likely point to the language of the instruction as evidence that the jurors are told about the difference between deciding burden of proof and preponderance of the evidence. For instance, they would likely argue that the instruction does not say that preponderance of the evidence is equated with "reasonable certainty." Instead, the jurors are informed that the burden is to "satisfy you to a reasonable certainty by the greater weight of the credible evidence that yes should be the answer." WIS JI—CIVIL 200. The instruction goes on to say that, by the greater weight of the evidence, is meant evidence which when "weighed against evidence opposed to it has more convincing power." *Id.* The defenders would thus conclude that the jurors *are* informed how preponderance of the evidence is the same as the greater weight of the evidence.

¶ 34.   The defenders would then say that "reasonable certainty" is a necessary component of the instruction because that term addresses the burden to satisfy the jurors. The instruction tells the jury to be reasonably certain about whether the plaintiff has met his or her affirmative duty to convince the jury of the weight of the evidence. *See id.* These defenders would most likely say that the supreme court got it right back in 1894 when the court rhetorically asked: "When the mind is satisfied or convinced of the existence of a fact, is the mind reasonably certain of the fact?" *Pelitier v. Chicago, St. Paul, Minneapolis & Omaha Railroad Co.*, 88 Wis. 521, 529, 60 N.W. 250 (1894).

¶ 35.   The defenders would thus conclude that the jurors are accurately informed about two different components of the law: burden of proof and preponderance of the evidence. In other words, the defenders would say that all the jurors are being asked to do is to be certain in their own minds (the burden of proving) that one side's evidence has greater weight than the other side's (the preponderance of the evidence).

¶ 36.   The Wisconsin Civil Jury Instructions Committee of 1996 appeared to be among the defenders. When it was requested that the Committee delete the term "reasonable certainty," the Committee considered the request and declined to do so. *See* Comment, WIS JI—CIVIL 200, 1996, Regents, Univ. of Wisconsin. The Committee opined as follows: "The Committee believes that the term 'reasonable certainty' has been firmly established in our case law and accurately reflects the degree of certitude jurors must reach in answering verdict questions." *Id.*

¶ 37.   I do not agree with the statement that the term is "firmly established" in our case law. And while the language in the instruction may accurately state

how those well versed in the law might understand the appropriate meaning of the term "reasonable certainty," the instruction fails miserably in its attempt to explain *to the jurors* how to use the term "reasonable certainty." As a result, I am convinced that the language in the instruction runs a real risk of the jurors applying the term "reasonable certainty" to the quality of the evidence rather than applying the term to their state of mind about which side is the more convincing. *See* Alan E. Gesler, *The Burden of Proof: How Certain is Reasonable*, 14 WATL VERDICT 12 (Winter 1991).

¶ 38.   First, I will respond to the Wisconsin Civil Jury Instructions Committee's assertion that the term "reasonable certainty" has been "firmly established" in our case law. I am not so convinced. In 1894, the supreme court wrote:

> The expression "reasonable certainty" is not strictly accurate as a definition of the weight of evidence required, and may mean no more than that *quantum* of evidence which satisfies or convinces the mind of a reasonable person of the truth of a particular claim or contention. Possibly, however, it may mean more, and so be misleading. We think it better, in such cases, to stop with stating the usual rule that the party having the burden of proof must establish his case by a preponderance or the greatest weight of evidence.

*Allen v. Murray*, 87 Wis. 41, 46, 57 N.W. 979 (1894). And in *Pelitier*, the court was also less than enthusiastic about the trial court's use of the term "reasonable certainty" when describing the plaintiff's burden of proof. Although the court affirmed the trial court's use of the term, even a casual reading of the decision shows that it was done with some misgiving. *See Pelitier*, 88 Wis. at 528.

¶ 39. Fast forward to *Sullivan v. Minneapolis, St. Paul & Sault Sainte Marie Railway Co.*, 167 Wis. 518, 167 N.W. 311 (1918). There, the court rejected the argument that a jury instruction in a negligence case must contain the phrase "reasonable certainty" to describe the burden of proof. *See id.* at 527. The court called the term "surplusage" which "adds nothing." *See id.*

¶ 40. The first unequivocal endorsement of the term was in *Kausch v. Chicago & Milwaukee Electric Railway Co.*, 176 Wis. 21, 26, 186 N.W.2d 257 (1922). But in that case no instruction was given to the jury on either the definition of burden of proof or preponderance of the evidence. *See id.* Rather, the trial judge instructed the jurors that they must be "reasonably certain" of their answers. *See id.* What that instruction did, therefore, was clearly and accurately speak to the jurors' state of mind. This is a far cry from the language now used in the standard instruction.

¶ 41. It was not until *Victorson v. Milwaukee & Suburban Transport Corp.*, 70 Wis. 2d 336, 356–57, 234 N.W.2d 332 (1975), that the court gave its first unequivocal imprimatur to the term as used in the standard jury instruction. But the reason given for this affirmation was founded upon the holding in *Kausch*. *See Victorson*, 70 Wis. 2d at 356–57. Again, however, the instruction given in *Kausch* clearly told the jurors that they had to be reasonably certain of their answers. *See Kausch*, 176 Wis. at 26. In other words, jurors were informed that the term went to their own state of mind. No attempt was made by the *Victorson* court to explain how the standard jury instruction told jurors the same thing as was told to the jurors in *Kausch*.

¶ 42. I am reminded of a quote made by the great Oliver Wendell Holmes:

It is so revolting to have no better reason for a rule of law than that it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past.

Oliver Wendell Holmes, *The Path of Law,* 10 HARV. L. REV. 457, 469 (1897).

¶ 43. It is my view that the law is not "firmly established" and that continued use of the term "reasonable certainty" is based, in part, upon blind allegiance to what, on closer inspection, reveals a checkered past. I agree with Alan Gesler's conclusion that the burden of proof language was created by accident rather than analysis. *See* Gesler, *supra,* at 13.

¶ 44. I will now discuss the Wisconsin Civil Jury Instructions Committee's statement that the instruction accurately reflects the degree of certitude jurors must reach in answering verdict questions. First, the statement does not go far enough. An instruction is not a good one simply because it accurately states the law. It must also be drafted in such a manner that jurors understand the language contained within it. The immediate problem with the instruction is that it makes no attempt to explain to the jurors how there are two separate pieces of information being presented to them: (1) that the jurors must be convinced in their own mind; and (2) that they must be convinced that one side's evidence is probably more true than the other side's. There is nothing in the instruction that says the weighing process means the jurors are asked to determine whether the plaintiff's evidence is more than likely truer than the defendant's. There is, in fact, no explanation of *how* to "weigh the evidence." This void creates the very real risk that the jurors will use the

"reasonable certainty" language as the method by which the two sides are weighed. The jurors can easily understand the instruction to say that unless the plaintiff's evidence is true to a "reasonable certainty" it may not be considered weighty enough for the plaintiff to prevail.

¶ 45. I will paraphrase the instruction based upon the dictionary definitions and empirical data I have set forth above. I am convinced that reasonable jurors could understand the instruction to say as follows: "Plaintiff's evidence is weighed against the defendant's and the job of deciding whose evidence has more weight is yours. But before you may find that the plaintiff's evidence has more weight, you must first be satisfied that the plaintiff has provided you with evidence that is absolutely true or nearly absolutely true." I would be the first to say that not all jurors would glean this meaning from the instruction. But I argue that some would. The job of an instruction is to not only *accurately state the law* but *explain* what the law means to persons who usually do not possess law degrees. Here, the instruction fails in its duty to teach.

¶ 46. I suggest an instruction that conveys a plain message to the jurors about what their job is. I would say:

> Your job is to determine whether the plaintiff has submitted evidence which has greater weight than the defendant's. It is the plaintiff's burden to satisfy you, in your own mind, that (his, her or its) evidence is more convincing to you than the defendant's. The plaintiff does not have to convince you that the evidence is absolutely true or even almost true. In other words, the plaintiff need not exclude the probability that the contrary conclusion may be true. Rather, the plaintiff has to convince you that

(his, her or its) evidence outweighs the other as to the probabilities. If you are satisfied that the evidence submitted by the plaintiff is more likely true than not true, you may find for the plaintiff. If, however, you are convinced that the plaintiff's evidence is more likely not true, than you may find that the plaintiff has not met (his, her or its) burden of convincing you.

¶ 47. I believe that the proposed instruction comports with Wisconsin law. It tells the jury that it is the plaintiff who has an affirmative duty. *See Eichman*, 128 Wis. at 388. It tells the jurors what this affirmative duty is: to convince them. *See id.* It tells the jurors what it is that the plaintiff must convince them of: that the plaintiff's evidence is more probably true than the defendant's. *See Grotjan v. Rice*, 124 Wis. 253, 258–59, 102 N.W. 551 (1905). Finally, it tells the jurors that if they are not convinced that the plaintiff's evidence is more likely true than not true, then the weight of the plaintiff's evidence is not sufficient.

¶ 48. In the final analysis, this concurrence is a call to change the paradigm about how we write our instructions. Much has been written about data confirming that jurors are often lost in a sea of legalisms. What we should be doing, as we enter the twenty-first century, is to better teach jurors what the law means and how they should apply it. We should not be content with giving an "accurate statement of the law." The various jury instructions committees in Wisconsin have done an exemplary job in this regard for the most part. However, the standard instruction on burden of proof stands as a poster child for those instructions that need to be more juror friendly. I fear that, while we may never know for sure whether a jury made its decision based upon an inaccurate understanding of its

responsibility, the risk that this has occurred is real. We should change the wording of the instruction to insure that jurors are really acting in accordance with the law given to them.